Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:

08 CIV 3597
PKL

                    Plaintiffs,

**COMPLAINT**

        - **Against** -

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                    Defendants.
-------------------------------------------------------------------------X

The plaintiffs herein, by their attorneys, Hill Rivkins & Hayden LLP, complaining of the

above named vessel and defendants, allege upon information and belief as follows:

**FIRST:**                    This Court has jurisdiction pursuant to 28 U.S.C. §1333 in

that this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules

of Civil Procedure. Plaintiffs invoke the maritime or admiralty provision of Rule 9(h) for the

purposes of Rule 14 ( c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and
Maritime Claims.

## THE PARTIES

**SECOND:**                    AIG Global Marine and Energy is a subsidiary of American
International Group ("AIG") which is an entity organized under the laws of the United States
with an office and place of business at 70 Pine Street, New York, New York 10270-0002.  In
addition to the offices in New York, AIG maintains offices around the world.  AIG's offices in
San Francisco, Chicago and in Europe provided certain guarantees on behalf of its assureds in
connection with cargo insured by it and the pertinent offices addresses which provided such
guarantees include, the San Francisco office at Two Rincon Center, 121 Spear Street, 3d Floor,
San Francisco, California 94105; and the Chicago office at 300 South Riverside Plaza, Chicago,
Illinois 60606.

**THIRD:**                    Ace European Group Ltd. ("ACE") is an entity organized
and existing under foreign law with an office and place of business at Lurgiallee 10, 60433
Frankfurt, Germany.

**FOURTH:**                    AIG issued certain guarantees on behalf of its assureds,
Columbia Forest Products, Copper and Brass, Macsteel Service Centers USA, Metals USA
Liberty, TSA Processing, and Rusal America Corp.

**FIFTH:**                     Alcoa Inc. is an entity organized under the laws of the state

of Pennsylvania with an office and place of business at 201 Isabella Street at 7th Street, Bridge

Pittsburgh, PA  15212-5858.


**SIXTH**:                     AIG Europe SA is an entity organized and existing under

foreign law with an office and place of business at Kasarmilkatu 44 00130 Helsinki, Finland,

which similarly provided certain guarantees in connection with cargo insured by it.


**SEVENTH:**                     Ace and AIG issued certain average guarantees on behalf

of its co-assured, Rusal America Corp.


**EIGHTH:**                     Columbia Forest Products Inc. was and is an entity under

the laws of the State of Oregon with its principal office and place of business at 222 S.W.

Columbia St., Suite 1575, Portland Oregon  97201.


**NINTH:**                     Copper & Brass was and is an entity organized and existing

under the laws of one of the United States, with an office and place of business at 1137 Atlanta

Industrial Drive, Marietta, Georgia 30066-6604.


**TENTH:**                     Macsteel Service Centers USA was and is an entity

organized and existing under the laws of one of the United States, with an office and place of

business at 7400 Mesa Drive, Houston, Texas 77028.

**ELEVENTH :**          TSA Processing was and is an entity organized and existing under the laws of one of the United States, with an office and place of business at 1625 B Sam Houston Parkway, Houston, Texas 77043 .

**TWELFTH:**          Metals USA (Liberty) was and is an entity organized and existing under the laws of one of the United States with an office and place of business at 2840 E. Heartland Dr., Liberty, MO 64068.

**THIRTEENTH:**          Rusal America Corp. was and is an entity organized and existing under the laws of one of the United States, with an office and place of business at 550 Mamaroneck Avenue, Suite 301, Harrison, New York 10528.

**FOURTEENTH:**          Plaintiffs are the shippers, consignees, insurers, and/or owners of the shipments which are more fully described in the Schedules to this Complaint, and bring this action on their own behalf and, as agent and trustee, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear, and plaintiffs are entitled to maintain this action based on their standing under the pertinent bills of lading, average guarantees, average bonds, and/or salvage guarantees which were issued or are to be issued in order to allow for the timely discharge of cargo.

**FIVTEENTH:**          M/V ATLANTIC TRADER ("Vessel") at all times relevant to the allegations set forth in this Complaint, was and is a 1986 built ocean going vessel of 17850 deadweight tons which is a Roll on – Roll off or "RO-RO" on which cargo is driven on and off

4

from the cargo holds, having a length overall of 173.5 meters, a breath of 23.09 meters and a deep draft of 13.3 meters.

**SIXTEENTH:**    At all times relevant, the vessel was owned, operated, and/or chartered by the company, Atlantic Trader Navigation Ltd., which upon information and belief, is an entity organized and existing under the laws of a foreign nation with its principal office and place of business at 12/13 Strait Street, Valletta VLT. 08 Malta.

**SEVENTEENTH:**    At all times relevant, the vessel was owned, operated, and/or chartered by the company, JSC Baltik Merkur, which upon information and belief, was and is an entity organized and existing under the laws of a foreign nation with its principal office and place of business at Apartment 408, Prospekt Stachek 47, St. Peterburg 193097 Russian Federation.

**EIGHTEENTH:**    The vessel sailed from the port of St. Petersburg, Russian Federation, on or about February 29, 2008, where various cargoes had been loaded aboard the vessel by numerous cargo interests including, but not limited to, those identified in this Complaint. The vessel is now bound for the port of Houston, Texas; where it is due to arrive on or about April 23, 2008, to discharge plaintiffs' cargo at the Manchester Terminal, 10,000 Manchester Blvd., Houston TX  77012.

**NINTEENTH:**    The vessel is now or during the course of this action will be within the jurisdiction of this Honorable Court.

**TWENTIETH:**     Atlantic Ro-Ro Carriers, Inc. ("Atlantic RoRo") is an entity organized and existing under the laws of the United States with an office and principal place of business at 1051 Bloomfield Ave., Suite 6, Clifton, New Jersey 07012.

**TWENTY-FIRST:**     Atlantic RoRo, was and is a carrier of merchandise for hire who issued certain contracts of carriage /bills of lading on behalf of the Master of the ATLANTIC TRADER, to various cargo interests, and those bills of lading were numbered as follows:

   (a) SPHU11080040, SPHU11080037, SPHU11080008 and SPHU11080039 were issued to shippers and/or consignees for delivery of certain aluminum coils that were loaded into ocean containers for which average guarantees, average bonds and/or salvage bonds were provided by AIG on behalf of the cargo interests/consignees Copper and Brass, MacSteel Service Centers USA, Metals USA (Liberty) and TSA Processing.

   (b) SPHU11080010 was issued to shippers and/or consignees for delivery of Russian Birch Plywood, for which average guarantees, average bonds, and/or salvage guarantees were provided by AIG on behalf of the cargo interests/consignee Columbia Forest Products Inc.

   (c) SPHU 11080015 up to and including SPHU 11080035 were issued to shippers and/or consignees for delivery of certain aluminum T bars, ingots and/or extrusion billets, which were loaded into ocean containers for which average guarantees, average bonds and/or salvage bonds were provided by AIG and Ace on behalf of the cargo interests/consignees, Rusal America Corp.

**TWENTY-SECOND:**    The Atlantic RoRo Bill of Lading Terms and Conditions include a Clause Paramount at paragraph 2 which in pertinent part incorporates the provisions of the Carriage of Goods by Sea Act of the United States of America ("COGSA"); and also provides for jurisdiction and claims at paragraph 3 as follows:

> Any dispute or claim arising under this Bill of Lading shall be decided exclusively by arbitration in New York before a single arbitrator pursuant to the rules of the Society of Maritime Arbitrators if not exceeding $50,000.00 and otherwise exclusively by the United States District Court for the Southern District of New York.

**TWENTY-THIRD:**   Upon information and belief, Plaintiffs' claims exceed $50,000 in that the amount of the general average guarantees provided by Plaintiffs now exceeds $20,000,000, and the amount of salvage now exceeds $2,000,000.00.

## FACTS

**TWENTY-FOURTH:** The ATLANTIC TRADER loaded its shipments of cargo including the cargo of the named plaintiffs at the port of St. Petersburg, Russian Federation, for discharge at the port of Houston, Texas on/about February 29, 2008.

**TWENTY-FIFTH:**   During the voyage and while enroute to the port of discharge, the Vessel experienced main engine failure in approximate position Latitude N58 degrees 54 minutes and Longitude 004 degrees, 0 minutes West, which is in the North Sea and west of the Orkney Islands. This caused the Vessel to anchor in order to make repairs.

**TWENTY-SIXTH:**  Thereafter, the vessel began to drag its anchor and in consideration of the potential for it to ground, shore authorities requested the vessel to obtain salvage assistance. Professional salvors were contacted to salve the vessel in accordance with a contractual agreement set forth in Lloyds Open Form (LOF) Salvage Contract, and the vessel was then taken in tow by the tug, ANGLIAN SOVEREIGN, which towed the Vessel to the port of Scapa Flow, United Kingdom, where she arrived on/about March 20, 2008.

**TWENTY-SEVENTH:** The vessel owners declared general average in accordance with the general maritime law and the contract of carriage, which requires the shipowner to meet three requirements in order for a sacrifice or expenditure to be shared on a ratable basis between the vessel owner and cargo interests. The requirements include: (a) a common peril or danger that is "imminent"; (b) a voluntary sacrifice for the common benefit; and (c) the successful avoidance of the peril.

**TWENTY-EIGHTH:** The vessel underwent repairs which were completed on/about April 3, 2008.

**TWENTY-NINTH:**  As a result of the main engine failure, the reported need for salvage, and the declaration of general average, Plaintiffs were required to enter into certain agreements to allow for their cargo to be discharged from the vessel.  The agreements include the following:

    (a)     An average guarantee was issued to: The Owners of the vessel and other parties to the adventure as their interests may appear, wherein cargo interests agree to make

prompt payment(s) on account of any contribution to General Average and/or Salvage and/or Special Charges, which may be ascertained to be properly and legally due in respect of the said goods. Moreover, the agreement is to be governed by English law and the High Court of Justice, London shall have exclusive jurisdiction over any dispute arising out of the agreement.

(b)    An average bond was or will be issued by the Consignees of the cargo to the Owners of the Vessel and other parties to the adventure wherein the cargo interests agree to make payments in accordance with any contribution to General Average and/or Salvage and/or Special Charges, which may be ascertained to be properly and legally due in respect of the said goods.

(c)    A Guarantee to the Council of Lloyd's and to the Contractors in Connection with a Salvage Agreement on Lloyd's Form which was entered into in consideration of the Contractors who rendered salvage assistance refraining from arresting the property or taking any other action to secure their claim under the Agreement against the cargo interests. This agreement is to be governed and construed according to English law and the Courts of England.

**THIRTIETH:**    Upon information and belief, the failure of the main engine during the course of the voyage was caused in whole or in part by the vessel Owner and Operators' failure to exercise due diligence to make the ship seaworthy, and/or to properly man, equip and supply the ship in accordance with the Vessel, Owner, Operator and /or Carrier's obligations under the bill of lading contracts, the Carriage of Goods by Sea Act, 46 App. U.S.C. §1303 (2005), as well as the general maritime law. All such disputes were to be governed by United

States law in the agreed upon forum – the United States District Court for the Southern District of New York.

**THIRTY-FIRST:**    Upon information and belief, the vessel was unseaworthy prior to commencement of the voyage in that the vessel's state of repair,  prior to breaking ground at St. Petersburg, Russian Federation, was such that it was prone to mechanical failure, in that the main engine, turbo charger, and its auxiliaries were not fit for an ocean voyage, due to Carrier, Owner, Charterers and/or Operators' failure to exercise due diligence to make the ship seaworthy at commencement of the voyage which was further complicated by the absence of suitable spare parts aboard, a properly trained crew, as well as the failure to maintain the engine, turbo charger and auxiliaries in accordance with manufacturers' recommendations, classification requirements, and/or the dictates of prudent seamanship.

**THIRTY-SECOND:** The vessel's main engine failure was further complicated by the Master/Owner's failure to maintain a watch by monitoring predicted and expectable weather conditions during the voyage and during the repair period, which subjected the vessel to Gale-like conditions at a time period where it was without a means of propulsion and solely dependent on its anchor and the scope of anchor chain to keep it from drifting free to a condition of peril; thereby subjecting the cargo interests to the risk and expense of a maritime salvage operation.

**THIRTY-THIRD:**    Upon information and belief, as of March 25, 2008, it was reported that salvors were requesting $3.5 million security for services rendered pursuant to the Lloyd's

Open Form Salvage Guarantee, and in response to the general average guarantees, general average bond and salvage guarantees, Plaintiffs have provided average guarantees in an amount now estimated to exceed $20,000,000 in order to allow their cargo to be discharged. In addition, salvage guarantees in an amount now estimated to be $2,000,000.00 were also provided. Plaintiffs' contribution towards general average and/or salvage is presently estimated to exceed $3.5 million.

**THIRTY-FOURTH:** Plaintiffs have performed all duties and obligations on their part to be performed.

### AS AND FOR A FIRST CAUSE OF ACTION FOR A DECLARATORY JUDGMENT DISMISSING OWNERS' AND VESSEL'S CLAIMS FOR GENERAL AVERAGE CONTRIBUTION DUE TO THE BREACH OF THE CONTRACT OF CARRIAGE

**THIRTY-FIFTH:**    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs First through Thirty-Fourth as though set forth fully therein.

**THIRTY-SIXTH:**    A dispute has arisen between Plaintiffs and Defendants in that the contract of carriage evidenced by the bills of lading, as well as Defendants' obligations under the Carriage of Goods by Sea Act, require Defendants to exercise due diligence to make the ship seaworthy and to properly man, equip, and supply the ship for the ocean voyage it was contractually bound to undertake.

11

**THIRTY-SEVENTH:** The general maritime law also requires Defendants to provide a seaworthy vessel that is tight, staunch and strong in order to carry Plaintiffs' cargo from the port of loading to the port of discharge in consideration for the freight duly paid by the Plaintiff cargo interests.

**THIRTY-EIGHTH:** A dispute has arisen in connection with the contract of carriage and the vessel's right to declare general average and/or salvage in that the vessel experienced a mechanical break down, which subjected Plaintiffs to claims for general average contribution and salvage which were the direct result of the vessel's unseaworthiness and Defendants' failure to provide a seaworthy vessel and/or to exercise due diligence to provide a seaworthy vessel before and at commencement of the voyage which was required under the Carriage of Goods by Sea Act and the contracts of carriage.

**THIRTY-NINTH:**    In order to resolve this controversy, Plaintiffs request that:

(a)  pursuant to 28 U.S.C.§2201, this court declare the respective rights and duties of the parties in this matter, and, in particular that the court declare that Defendants' breached the contract of carriage and their obligation to exercise due diligence to provide a seaworthy vessel before the vessel broke ground at the port of St. Petersburg, Russian Federation; and

(b) that as a result of Defendants' breach of the contract of carriage and their obligations under the general maritime law as well as the Carriage of Goods by Sea Act, they have no legal right to claim for general average; and

( c) that as a result of Defendants' breach of the contract of carriage and their obligations under the general maritime law as well as the Carriage of Goods by Sea Act, they must defend and

12

indemnify Plaintiffs for any claim or amounts paid to salvors pursuant to the salvage guarantees now in place; and

(d )that as a result of the forementioned unseaworthiness that the general average guarantees, general average bonds and salvage bonds be returned to Plaintiffs; and

(e) that Defendants' claims for general average and/or salvage contribution be dismissed with prejudice and with costs and attorneys fees.

**FORTIETH:**    By reason of the premises, Plaintiffs' damages as nearly as same can now be estimated, no part of which has been paid, is or will be their proportionate share of general average and/or salvage contribution as determined by the general average adjusters and/or the Council of Lloyds in an amount now estimated to be $3,500,000 or approximately fifteen percent of the guarantees now provided, which are in the amount of: (a) $399,149.46 for the Schedule A Plaintiffs, (b) $59,383.60 for the Schedule B Plaintiffs,  and ( c) $21,729,259.36 for the Schedule C Plaintiffs, for a total guarantee amount of $22,187,792.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANTS FOR INDEMNNITY FOR
ANY SALVAGE CONTRIBUTION
ASSESSED / PAID BY PLAINTIFFS**

**FORTY-FIRST:**    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs First through Fortieth as though set forth fully therein.

**FORTY-SECOND:**  Defendants' claims for general average are not cognizable under the contracts of carriage and/or the general maritime law and/or the Carriage of Goods by Sea Act due to the breach of owner's nondelegable duty to exercise due diligence to provide a

13

seaworthy vessel and to properly man, equip, and supply the ship for the ocean voyage it was contractually bound to undertake.

**FORTY-THIRD:**   The incident which gave rise to the claim for general average and for salvage was caused by the Defendants' failure to exercise due diligence to provide a seaworthy vessel and in derogation of Defendants' duty under the law.

**FORTY-FOURTH:**  Plaintiffs are entitled to indemnity under the contracts of carriage (bills of lading), general maritime law and/or common law from Defendants, for any sums due and payable or paid to  salvors for this voyage.

**W  H  E  R  E  F  O  R  E,** Plaintiffs pray:

1.     That process in due form of law according to the practice of this Court may issue against the Defendants.

2.     That if the defendants cannot be found within this District, that all of its property within this District be attached in the sum set forth in this complaint, with interest and costs.

3.     That a warrant for the arrest of the vessel, MV Atlantic Trader, in rem,  her engines, tackle apparel, etc.,  may issue, according to the practices of this Honorable Court in causes of admiralty and maritime jurisprudence, and that all persons having or claiming any interest therein be cited to appear and answer, under oath all and singular the matters aforesaid;

that plaintiff have a decree for its damages aforesaid, with interest and costs; and that the MV

Atlantic Trader be condemned and sold to satisfy plaintiffs' decree.

4.    That a decree be entered in favor of plaintiff against defendants and the vessel for

the amount of plaintiff's damages, including any amount(s) paid or assessed in general average

or salvage by the Council of Lloyds, together with interest and costs.

5.    Plaintiff further prays for such other, further and different relief as to this Court

may seem just and proper in the premises.

Dated: New York, New York
       April 15, 2008

HILL RIVKINS & HAYDEN
Attorneys for Plaintiffs,

By: _____
    Raymond P. Hayden (RH-5733)
    Gerard W. White (GW-9797)

    45 Broadway, Suite 1500
    New York, New York 10006
    (212) 669-0600

29810\Pleadings\Complaint1