UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------X

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

              Plaintiffs,

      -   **Against -**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

              Defendants.

----------------------------------------------------------------------------X

Index No.:
**08 Civ. 3597 PKL**

 

## MEMORANDUM OF LAW IN
## SUPPORT OF ORDER TO SHOW CAUSE
## REQUESTING EXPEDITED DISCOVERY

 

HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**OF COUNSEL:**
  **Raymond P. Hayden**
  **Gerard W. White**

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum in support of their order to show cause requesting discovery from the vessel, MV Atlantic Trader, in rem, which along with its owners/operators, Atlantic Trader Navigation Ltd., an entity which is domiciled in Malta, as well as JSC Baltik Merkur, an entity domiciled in St. Petersburg, Russian Federation, cannot be served or joined in this action in time for discovery to proceed in accordance with a discovery order that would be typically entered into by the parties at the Rule 26 discovery conference. The pending action was filed by Plaintiffs on April 15, 2008, and the vessel is due to arrive in Houston, Texas, on April 22/23, 2008 in order to discharge its cargo of aluminum products at the Manchester Terminal in Houston. (White Aff. ¶1-4, Exh. A, ¶16-18).

Plaintiffs' action was filed in connection with an incident at sea which occurred during the pending voyage on or about March 19/20, 2008, which gave rise to Owners' claims for general average and claims for salvage that were the result of the ship having lost power in the vicinity of Scapa Flow, United Kingdom, where it anchored and dragged anchor in a storm, thereby requiring the assistance of a tow from the vessel/tug, Anglian Sovereign. (White Aff. Exh. A, ¶25 to 30).

Plaintiffs' posted average guarantees, average bonds, and salvage guarantees in accordance with the general maritime law and the bills of lading that were issued by the carrier, Atlantic Ro-Ro Carriers, Inc. (White Aff. Exh. A, ¶33). The bills of lading provided for a forum selection clause for the resolution of any dispute or claim exceeding $50,000 to be decided

exclusively by the United States District Court for the Southern District of New York. (White

Aff., Exh. A ¶22). The dispute was brought before the Court in two causes of action which

include, (1) a declaratory judgment dismissing Owners' and Vessel claims for general average

contribution due to its failure to exercise due diligence to make the ship seaworthy and to

properly man, equip and supply the ship for the ocean voyage from St. Petersberg, Russian

Federation to Houston, Texas, and (2) a claim against Defendants for indemnity for any salvage

contribution that will be assessed by the Council of Lloyds in accordance with the Lloyds Open

Form Salvage Agreement entered into by the Vessel/Owners, payment for which was guaranteed

by Plaintiffs in an amount not to exceed, $2,788,694,12. (Aff. Exh. A ¶35-44).


## ARGUMENT

### POINT I –

### Plaintiffs are Entitled to Expedited Discovery in that Exceptional Circumstances Exist and the Opportunity to Investigate the Cause of the Engine Failure and Dragging at Anchor While Off Scapa Flow, UK Will Be Lost  If Discovery Is Not Taken


A.  Expedited Discovery.

Historically, the problem faced by maritime litigants when witnesses such as vessel crews

were to leave the United States was resolved by the use of deposition testimony that was noticed

"*de bene esse*." This procedure permitted the taking of such testimony where the witness was

bound on a voyage to sea. See, Federal Rules of Civil Procedure 3d (West, 2008) Advisory

Committee Notes for Rule 30 (subdivision (a)) at pages 178-179.  Today, the *de bene esse*

procedure is no longer mentioned by the Rules since Rule 30(a)(2)(A)(iii) permits the taking of a

deposition without leave of court and before the parties have conferred in a discovery conference pursuant to Rule 26 (d).

Rule 30(a) (2) (A)(iii) permits the taking of a deposition, provided the notice provides a certification "with supporting facts" that the deponent is expected to leave the United States and will be unavailable for examination in this country after that time." F.R.C.P. 30(a)(2)(A)(iii) Inasmuch as the vessel is headed to a foreign port after it sails from Houston, the identities of the officers involved are not known and the cooperation of the defendants cannot be had, the Court's intervention is now being sought.

An application for expedited discovery is also contemplated by Rule 26(d) <u>Timing and Sequence of Discovery</u> which provides:

> \*          \*          \*
>
> (1) Timing.  A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), *or when authorized by these rules, by stipulation, or by court order*. (emphasis added)
>
> \*          \*          \*

As for maritime matters, the Courts have similarly permitted the taking of discovery on an expedited basis under Rule 27(a)(1) which provides for the perpetuation of testimony  before an action is filed.  The Rule provides in pertinent part, "A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides..." F.R.C.P. 27 (a)(1). This rule has been relied upon by courts to perpetuate testimony where no action has been filed, and a court may issue an order pursuant to Rule 27(a)(3) which provides:

3

"If satisfied that perpetuating the testimony may prevent a failure or delay of justice, the court must issue an order that designates or describes the persons whose depositions may be taken, specifies the subject matter of the examinations, and states whether the depositions will be taken orally or by written interrogatories. The depositions may then be taken under these rules, and the court may issue orders like those authorized by Rules 34 and 35. A reference in these rules to the court where an action is pending means, for purposes of this rule, the court where the petition for the deposition was filed."

F.R.C.P. Rule 27(a)(3).

The Rule has been held to apply in admiralty cases. *Messeller v. United States*, 158 F.2d 380, 382 (2d Cir. 1946). For example, *In the Matter of the Petition of Campania Chilena De Navegacion*, 2004 WL 1084243 (E.D.N.Y.), the court ordered depositions of the vessel's crew be taken while the vessel was in New York in order to ascertain facts relating to a fire aboard the vessel some months prior. The Court took note of prior precedent where such testimony was granted and noted that the crew would not only leave with the ship, but as foreign nationals, they may never again be subject to jurisdiction here in the United States and it may be difficult if not impossible to locate them for deposition elsewhere." Id at *4.


Typically, an order to perpetuate testimony in a maritime matter where no action is filed, is dependant upon the requirements of Rule 27 and a finding that "extraordinary circumstances" exist. The classic example of extraordinary circumstances is where a "vessel with crew members possessing particular knowledge of a dispute is about to leave, or where there is a special need for information which will be lost if action is not taken immediately." *In the Matter of the Application of Deiulemar Compagnia di Navigazione S.P.A. v. Pacific Eternity, S.A.*, 198 F.3d 473, 479 (4th Cir. 1999), see also, *Koch Fuel Int'l v. M/V. South Star*, 118 F.R.D. 318, 320 (E.D.N.Y. 1987).

4

As set forth in the Affirmation of Gerard White, plaintiffs have been diligent in their efforts to obtain discovery in the pending action, and have sought to accommodate the schedule of the vessel. (White Aff/ ¶11) To accommodate the vessel and its attorneys, Plaintiffs had been willing to agree to postpone the taking of testimony until June 23-26, 2008 when the vessel was represented to be calling at the port of Baltimore, Maryland. (White Aff. ¶11)  The vessel interests however, would not assure or stipulate that the same officers and crew would be aboard when it returned. In addition, plaintiffs asked for a stipulation that in the event that an officer or crewmen was not aboard in Baltimore that such witnesses would be produced in the United States at a later date. (White Aff. ¶14)  The vessel interests will not give those assurances, thus "exceptional circumstances exist," in that the vessel is sailing from Houston on a foreign voyage and the testimony from the officers and crew and the opportunity to inspect the engine room to ascertain the cause of the failure of the main engine/ loss of propulsion will be lost if discovery is not now ordered to go forward in Houston, Texas.   (White Aff. ¶13).

## CONCLUSION

Based on the Court's inherent power to control discovery and the presence of "exceptional circumstances" warranting the taking of discovery in Houston, Texas, plaintiffs respectfully request that the vessel interests be ordered to produce witnesses, documents and allow for inspection of the vessel by Plaintiffs' surveyor during its upcoming call in Houston, Texas.

Dated: New York, New York
        April 21, 2008

Respectfully submitted,

HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

By: _____
        Gerard W. White
        45 Broadway – Suite 1500
        New York, New York  10006
        (212) 669-0600

6

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

                      Plaintiffs,

        -   **Against -**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                      Defendants.
-------------------------------------------------------------------------X

Index No.:
**08 Civ. 3597 PKL**

**AFFIRMATION OF**
**GERARD W. WHITE IN**
**SUPPORT OF ORDER TO**
**SHOW CAUSE**

Gerard W. White, an attorney duly admitted to practice before this Honorable Court,

hereby affirms under the penalty of perjury as follows:

1. I am a member of the Hill Rivkins & Hayden LLP law firm and provide this affirmation

    in support of Plaintiffs' Order to Show Cause, which has been filed to obtain discovery

    on a vessel which is scheduled to arrive in Houston, Texas on April 22, 2008 and will

    depart on/about April 26/27, 2008.

2. The purpose of this application is to obtain leave from the Court in order to conduct discovery on the MV Atlantic Trader, which is due to arrive in Houston, Texas on April 22, 2008. No prior application has been made to the Court. Plaintiffs move by way of an Order to Show Cause because of the urgent nature of the request for discovery since the ship is of a foreign flag (Malta), with a foreign crew, and the opportunity to take discovery will be lost when it sails from Houston, Texas. Issue has not been joined as the vessel owners are based in Russia and Malta and the action was just filed on April 15, 2008.

3. An Order granting leave to conduct discovery by way of <u>Requests for Production of Documents Pursuant to Rule 34, Depositions of the Ship's Officers by Rule 30(a)(2)(A)(iii), and Entry Upon the Vessel by Rule 34</u> is being requested on an expedited basis due to the special need for information relating to an engine casualty and loss of propulsion which occurred on March 19/20, 2008, while the vessel was at sea, and in view of the likelihood that the information may be lost if action is not taken immediately. Houston is the first port of call since the casualty.

4. The action arises under 28 U.S.C. §1333 as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. A copy of the Complaint which was filed electronically with the Court on April 15, 2008 is attached hereto as Exhibit A. A copy of the Complaint was served on the Defendant carrier, Atlantic Ro-Ro Carriers Inc. at their offices in New Jersey. In addition, a courtesy copy was provided

to attorneys representing the shipowner, Freehill Hogan & Mahar, 80 Pine Street, New York, New York 10005-1759.

5. Plaintiffs to this action consist of insurance underwriters and cargo interests whose shipments of plywood, aluminum coils and aluminum ingots/"t" bars were loaded aboard the vessel in St. Petersburg, Russian Federation, and were to be discharged in Houston, Texas, in accordance with bills of lading that are more specifically identified in the Complaint/Exh. A at paragraphs 21 (a) – (c ).

6. The bills of lading incorporate the Carriage of Goods by Sea Act of the United States, and similarly provide for the United States District Court for the Southern District of New York as the venue for disputes in excess of $50,000. A sample bill of lading along with the relevant terms and conditions are set forth in Exhibit B at paragraphs 3. Plaintiffs have provided average guarantees and salvage guarantees to allow for the timely discharge of cargo, and the anticipated salvage award which is to be issued by the Council of Lloyds is expected to require payment by plaintiffs in an amount now estimated to be $2,788,694.12, based on the amount of the guarantees furnished by Plaintiffs to the salvors after the salvage service.

7. Plaintiffs maintain that the engine failure was occasioned by the failure of the vessel and its owners to exercise due diligence to make the ship seaworthy, a contractual requirement under the bill of lading inasmuch as the provisions of the Carriage of Goods

by Sea Act of the United States are incorporated, including 46 U.S.C. App. §1303 (2005) (Exh. A, ¶30).

8.  In order to preserve evidence and testimony that may not be available if the vessel is allowed to sail from the United States, certain vessel records regarding the main engine, the scope of repair, the dragging of anchor and the need for salvage assistance, are being requested to be produced in accordance with the Request For Production of Documents Pursuant to Rule 34 which is attached as Exhibit C. The documents being requested primarily include weather data, charts, log books, maintenance records, reports concerning the incident and repair invoices for the machinery that failed during the voyage.   In addition, navigational information as to where the anchor dragged and communications relevant to the need for salvage assistance are also being requested.

9.  Testimony from the vessel's officers including the Captain, the navigation officer in charge of the vessel when it dragged anchor of Scapa Flow, United Kingdom, as well as from the engineering officers having knowledge of the engine problems that were experienced is being requested in the Notices of Depositions which are attached as Exhibit D. The Captain would have been in charge of the vessel at the time of the casualty.  Both the Captain and the navigation officer would have relevant knowledge concerning the circumstances as to where the vessel anchored, when it dragged anchor, as well as the decision to hire a salvage tug to tow it to safety. As for the engineering officers, the Chief Engineer would have been in charge of the engine room during the voyage. The First Engineer is typically in charge of the maintenance of the vessel, and

would have relevant knowledge concerning the main engine's state of repair. The Engineer on Watch at the time of the engine breakdown would have information as to when and how the problems developed with the main engine when power was lost.

10. Inasmuch as the extent of the problem and the scope of repair are not known to Plaintiffs, permission to allow a marine surveyor aboard the vessel to conduct a survey/investigation into the facts giving rise to the engine failure and to collect documents, is also being requested. A Notice of Inspection aboard the MV Atlantic Trader is further attached as Exhibit E.

11. Requests to obtain the above referenced documents and testimony as well as permission for a surveyor to board the vessel were made by Plaintiffs' counsel to the attorneys representing the vessel interests, Wayne D. Meehan, Esq. with the law firm, Freehill Hogan & Mahar, 80 Pine Street, New York, New York 10005-1759. Conversations between counsel were had over the last several days in order to address these discovery requests as well as to obtain security. Correspondence to this effect is attached as Exhibit F. Despite diligent effort, an agreement to conduct discovery has not been obtained. Owners indicate a preference to conduct testimony of the ship's officers/crew in Baltimore, Maryland, where the vessel is scheduled to call on/about June 23 - 26, 2008. An agreement could not be reached because vessel interests were unwilling to ensure that the same crew/officers would be aboard the vessel when it returned to Baltimore. In addition, the vessel interests were unwilling to ensure that in the event that an officer or crewmen was not aboard in Baltimore when the vessel returned, that they would be

produced here at a later date for depositions to be taken here in the United States. These assurances have not been furnished from the vessel owner who advised that such testimony would have to go forward in Russia.

12. Legal precedent for allowing such testimony may be found in the following decisions: *Application of Deiulemar Di Navigazione S.p.A.*, 153 F.R.D. 592, 1994 A.M.C. 2250 (E.D.La. 1994). Here, the Court granted petitioners application pursuant to Rule 27(a)(2) to conduct discovery in aid of arbitration on a vessel that was scheduled to leave port. It noted that extraordinary circumstances occur where a vessel with crew members possessing particular knowledge of the dispute is about to leave port. Id. at 593, citing, *Oriental Commercial and Shipping Company, Ltd. v. Rosseel*, 125 F.R.D. 398 (S.D.N.Y. 1989). Other legal precedent for allowing expedited discovery on a maritime matter may similarly be found at *Koch Fuel International v. MV South Star*, 118 F.R.D. 318 (E.D.N.Y. 1987) and *Ferro Union Corp. v. SS Ionic Coast*, 43 F.R.D. 11 (S.D.Tex. 1967). Inasmuch as the jurisdiction clause in the bill of lading provides for the resolution of disputes in the Southern District of New York, and since the action has been commenced but not yet served on the defendants who are foreign based, the pending Order to Show Cause seeks leave to conduct discovery pursuant to F.R.C.P. 26(d) and 30(a)(2)(A)(iii). A memorandum discussing this precedent is provided with this Order to Show Cause.

13. The Atlantic Trader is scheduled to discharge in Houston, Texas and then proceed to destinations unknown. The availability of ship's officers familiar with the engine break

down, the subsequent dragging of the anchor, and the necessity for salvage tugs will be lost if the testimony and documents are not provided during the vessel's port call in Houston. The vessel is of Maltese flag and is understood to employ officers and crew who are foreign nationals who are not likely to be aboard at any subsequent port calls that the vessel may have in the United States.

14. Before filing this application, I tried to resolve these outstanding issues with Wayne D. Meehan, Esq.  Correspondence and telephone calls were exchanged over the past week end, on April 19-20, 2008, in an effort to avoid the filing of this application.  These efforts were not successful.  Mr. Meehan was advised of our intention to file this application during our telephone conversation of April 19, 2008, and by e-mail and telephone earlier today.  Mr. Meehan expressed a preference to having the application heard on Wednesday morning, April 23, 2008.

15. A proposed Order granting Plaintiffs' request to conduct discovery during the vessel's port call in Houston, Texas is attached as Exhibit G.

Dated:  April 21, 2008

_____
Gerard W. White (GW-9797)

29810/pleadings/GWW AFF

Exhibit A

JUDGE LEISURE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

 Case No. 3597

          Plaintiffs,

      - Against -                                         **SUMMONS IN A CIVIL CASE**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

          Defendants.

      TO: (Name of Defendant)

           **See attached list.**

      **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S
ATTORNEY (name and address)

          HILL RIVKINS & HAYDEN LLP
          45 Broadway – Suite 1500
          New York, New York 10006

an answer to the complaint which is herewith served upon you, within __20__ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint. You must also file your
answer with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
_____          __April 15, 2008____
CLERK                                                              DATE

_Latecia Curtis_
_____
(By) DEPUTY CLERK

## **Defendants**

Atlantic Trader Navigation Ltd.
12/13 Strait Street
Valletta VLT. 08 Malta.


JSC Baltik Merkur
Apartment 408
Prospekt Stachek 47
St. Peterburg 193097
Russian Federation.


Atlantic Ro-Ro Carriers, Inc.
1051 Bloomfield Ave.
Suite 6
Clifton, New Jersey 07012.

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST          Index No.:
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

                         Plaintiffs,

                                                    **COMPLAINT**

            **- Against -**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                         Defendants.
------------------------------------------------------------------------X


        The plaintiffs herein, by their attorneys, Hill Rivkins & Hayden LLP, complaining of the

above named vessel and defendants, allege upon information and belief as follows:


        **FIRST:**                        This Court has jurisdiction pursuant to 28 U.S.C. §1333 in

that this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules

of Civil Procedure. Plaintiffs invoke the maritime or admiralty provision of Rule 9(h) for the

purposes of Rule 14 ( c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims.

## THE PARTIES

**SECOND:**                    AIG Global Marine and Energy is a subsidiary of American International Group ("AIG") which is an entity organized under the laws of the United States with an office and place of business at 70 Pine Street, New York, New York 10270-0002. In addition to the offices in New York, AIG maintains offices around the world. AIG's offices in San Francisco, Chicago and in Europe provided certain guarantees on behalf of its assureds in connection with cargo insured by it and the pertinent offices addresses which provided such guarantees include, the San Francisco office at Two Rincon Center, 121 Spear Street, 3d Floor, San Francisco, California 94105; and the Chicago office at 300 South Riverside Plaza, Chicago, Illinois 60606.

**THIRD:**                    Ace European Group Ltd. ("ACE") is an entity organized and existing under foreign law with an office and place of business at Lurgiallee 10, 60433 Frankfurt, Germany.

**FOURTH:**                    AIG issued certain guarantees on behalf of its assureds, Columbia Forest Products, Copper and Brass, Macsteel Service Centers USA, Metals USA Liberty, TSA Processing, and Rusal America Corp.

**FIFTH:**                Alcoa Inc. is an entity organized under the laws of the state

of Pennsylvania with an office and place of business at 201 Isabella Street at 7th Street, Bridge

Pittsburgh, PA  15212-5858.


**SIXTH:**                AIG Europe SA is an entity organized and existing under

foreign law with an office and place of business at Kasarmilkatu 44 00130 Helsinki, Finland,

which similarly provided certain guarantees in connection with cargo insured by it.


**SEVENTH:**                Ace and AIG issued certain average guarantees on behalf

of its co-assured, Rusal America Corp.


**EIGHTH:**                Columbia Forest Products Inc. was and is an entity under

the laws of the State of Oregon with its principal office and place of business at 222 S.W.

Columbia St., Suite 1575, Portland Oregon  97201.


**NINTH:**                Copper & Brass was and is an entity organized and existing

under the laws of one of the United States, with an office and place of business at 1137 Atlanta

Industrial Drive, Marietta, Georgia 30066-6604.


**TENTH:**                Macsteel Service Centers USA was and is an entity

organized and existing under the laws of one of the United States, with an office and place of

business at 7400 Mesa Drive, Houston, Texas 77028.


3

**ELEVENTH :**          TSA Processing was and is an entity organized and existing under the laws of one of the United States, with an office and place of business at 1625 B Sam Houston Parkway, Houston, Texas 77043 .

**TWELFTH:**          Metals USA (Liberty) was and is an entity organized and existing under the laws of one of the United States with an office and place of business at 2840 E. Heartland Dr., Liberty, MO 64068.

**THIRTEENTH:**          Rusal America Corp. was and is an entity organized and existing under the laws of one of the United States, with an office and place of business at 550 Mamaroneck Avenue, Suite 301, Harrison, New York 10528.

**FOURTEENTH:**          Plaintiffs are the shippers, consignees, insurers, and/or owners of the shipments which are more fully described in the Schedules to this Complaint, and bring this action on their own behalf and, as agent and trustee, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear, and plaintiffs are entitled to maintain this action based on their standing under the pertinent bills of lading, average guarantees, average bonds, and/or salvage guarantees which were issued or are to be issued in order to allow for the timely discharge of cargo.

**FIVTEENTH:**          M/V ATLANTIC TRADER ("Vessel") at all times relevant to the allegations set forth in this Complaint, was and is a 1986 built ocean going vessel of 17850 deadweight tons which is a Roll on – Roll off or "RO-RO" on which cargo is driven on and off

4

from the cargo holds, having a length overall of 173.5 meters, a breath of 23.09 meters and a deep draft of 13.3 meters.

**SIXTEENTH**:          At all times relevant, the vessel was owned, operated, and/or chartered by the company, Atlantic Trader Navigation Ltd., which upon information and belief, is an entity organized and existing under the laws of a foreign nation with its principal office and place of business at 12/13 Strait Street, Valletta VLT. 08 Malta.

**SEVENTEENTH:**          At all times relevant, the vessel was owned, operated, and/or chartered by the company, JSC Baltik Merkur, which upon information and belief, was and is an entity organized and existing under the laws of a foreign nation with its principal office and place of business at Apartment 408, Prospekt Stachek 47, St. Peterburg 193097 Russian Federation.

**EIGHTEENTH:**          The vessel sailed from the port of St. Petersburg, Russian Federation, on or about February 29, 2008, where various cargoes had been loaded aboard the vessel by numerous cargo interests including, but not limited to, those identified in this Complaint. The vessel is now bound for the port of Houston, Texas; where it is due to arrive on or about April 23, 2008, to discharge plaintiffs' cargo at the Manchester Terminal, 10,000 Manchester Blvd., Houston TX 77012.

**NINTEENTH:**          The vessel is now or during the course of this action will be within the jurisdiction of this Honorable Court.

**TWENTIETH:**    Atlantic Ro-Ro Carriers, Inc. ("Atlantic RoRo") is an entity organized and existing under the laws of the United States with an office and principal place of business at 1051 Bloomfield Ave., Suite 6, Clifton, New Jersey 07012.

**TWENTY-FIRST:**    Atlantic RoRo, was and is a carrier of merchandise for hire who issued certain contracts of carriage /bills of lading on behalf of the Master of the ATLANTIC TRADER, to various cargo interests, and those bills of lading were numbered as follows:

(a) SPHU11080040, SPHU11080037, SPHU11080008 and SPHU11080039 were issued to shippers and/or consignees for delivery of certain aluminum coils that were loaded into ocean containers for which average guarantees, average bonds and/or salvage bonds were provided by AIG on behalf of the cargo interests/consignees Copper and Brass, MacSteel Service Centers USA, Metals USA (Liberty) and TSA Processing.

(b) SPHU11080010 was issued to shippers and/or consignees for delivery of Russian Birch Plywood, for which average guarantees, average bonds, and/or salvage guarantees were provided by AIG on behalf of the cargo interests/consignee Columbia Forest Products Inc.

(c) SPHU 11080015 up to and including SPHU 11080035 were issued to shippers and/or consignees for delivery of certain aluminum T bars, ingots and/or extrusion billets, which were loaded into ocean containers for which average guarantees, average bonds and/or salvage bonds were provided by AIG and Ace on behalf of the cargo interests/consignees, Rusal America Corp.

**TWENTY-SECOND:**    The Atlantic RoRo Bill of Lading Terms and Conditions include a Clause Paramount at paragraph 2 which in pertinent part incorporates the provisions of the Carriage of Goods by Sea Act of the United States of America ("COGSA"); and also provides for jurisdiction and claims at paragraph 3 as follows:

> Any dispute or claim arising under this Bill of Lading shall be decided exclusively by arbitration in New York before a single arbitrator pursuant to the rules of the Society of Maritime Arbitrators if not exceeding  $50,000.00 and otherwise exclusively by the United States District Court for the Southern District of New York.

**TWENTY-THIRD:**  Upon information and belief, Plaintiffs' claims exceed $50,000 in that the amount of the general average guarantees provided by Plaintiffs now exceeds $20,000,000, and the amount of salvage now exceeds $2,000,000.00.


# FACTS

**TWENTY-FOURTH:** The ATLANTIC TRADER loaded its shipments of cargo including the cargo of the named plaintiffs at the port of St. Petersburg, Russian Federation, for discharge at the port of Houston, Texas on/about February 29, 2008.


**TWENTY-FIFTH:**    During the voyage and while enroute to the port of discharge, the Vessel experienced main engine failure in approximate position Latitude N58 degrees 54 minutes and Longitude 004 degrees, 0 minutes West, which is in the North Sea and west of the Orkney Islands. This caused the Vessel to anchor in order to make repairs.

7

**TWENTY-SIXTH:**  Thereafter, the vessel began to drag its anchor and in consideration of the potential for it to ground, shore authorities requested the vessel to obtain salvage assistance. Professional salvors were contacted to salve the vessel in accordance with a contractual agreement set forth in Lloyds Open Form (LOF) Salvage Contract, and the vessel was then taken in tow by the tug, ANGLIAN SOVEREIGN, which towed the Vessel to the port of Scapa Flow, United Kingdom, where she arrived on/about March 20, 2008.

**TWENTY-SEVENTH:** The vessel owners declared general average in accordance with the general maritime law and the contract of carriage, which requires the shipowner to meet three requirements in order for a sacrifice or expenditure to be shared on a ratable basis between the vessel owner and cargo interests. The requirements include: (a) a common peril or danger that is "imminent"; (b) a voluntary sacrifice for the common benefit; and (c) the successful avoidance of the peril.

**TWENTY-EIGHTH:** The vessel underwent repairs which were completed on/about April 3, 2008.

**TWENTY-NINTH:**  As a result of the main engine failure, the reported need for salvage, and the declaration of general average, Plaintiffs were required to enter into certain agreements to allow for their cargo to be discharged from the vessel.  The agreements include the following:

(a)    An average guarantee was issued to: The Owners of the vessel and other parties to the adventure as their interests may appear, wherein cargo interests agree to make

8

prompt payment(s) on account of any contribution to General Average and/or Salvage and/or Special Charges, which may be ascertained to be properly and legally due in respect of the said goods. Moreover, the agreement is to be governed by English law and the High Court of Justice, London shall have exclusive jurisdiction over any dispute arising out of the agreement.

(b)     An average bond was or will be issued by the Consignees of the cargo to the Owners of the Vessel and other parties to the adventure wherein the cargo interests agree to make payments in accordance with any contribution to General Average and/or Salvage and/or Special Charges, which may be ascertained to be properly and legally due in respect of the said goods.

(c)     A Guarantee to the Council of Lloyd's and to the Contractors in Connection with a Salvage Agreement on Lloyd's Form which was entered into in consideration of the Contractors who rendered salvage assistance refraining from arresting the property or taking any other action to secure their claim under the Agreement against the cargo interests. This agreement is to be governed and construed according to English law and the Courts of England.

**THIRTIETH:**        Upon information and belief, the failure of the main engine during the course of the voyage was caused in whole or in part by the vessel Owner and Operators' failure to exercise due diligence to make the ship seaworthy, and/or to properly man, equip and supply the ship in accordance with the Vessel, Owner, Operator and /or Carrier's obligations under the bill of lading contracts, the Carriage of Goods by Sea Act, 46 App. U.S.C. §1303 (2005), as well as the general maritime law. All such disputes were to be governed by United

States law in the agreed upon forum – the United States District Court for the Southern District of New York.

**THIRTY-FIRST**:     Upon information and belief, the vessel was unseaworthy prior to commencement of the voyage in that the vessel's state of repair,  prior to breaking ground at St. Petersburg, Russian Federation, was such that it was prone to mechanical failure, in that the main engine, turbo charger, and its auxiliaries were not fit for an ocean voyage, due to Carrier, Owner, Charterers and/or Operators' failure to exercise due diligence to make the ship seaworthy at commencement of the voyage which was further complicated by the absence of suitable spare parts aboard, a properly trained crew, as well as the failure to maintain the engine, turbo charger and auxiliaries in accordance with manufacturers' recommendations, classification requirements, and/or the dictates of prudent seamanship.

**THIRTY-SECOND**: The vessel's main engine failure was further complicated by the Master/Owner's failure to maintain a watch by monitoring predicted and expectable weather conditions during the voyage and during the repair period, which subjected the vessel to Gale-like conditions at a time period where it was without a means of propulsion and solely dependent on its anchor and the scope of anchor chain to keep it from drifting free to a condition of peril; thereby subjecting the cargo interests to the risk and expense of a maritime salvage operation.

**THIRTY-THIRD**:     Upon information and belief, as of March 25, 2008, it was reported that salvors were requesting $3.5 million security for services rendered pursuant to the Lloyd's

10

Open Form Salvage Guarantee, and in response to the general average guarantees, general average bond and salvage guarantees, Plaintiffs have provided average guarantees in an amount now estimated to exceed $20,000,000 in order to allow their cargo to be discharged. In addition, salvage guarantees in an amount now estimated to be $2,000,000.00 were also provided. Plaintiffs' contribution towards general average and/or salvage is presently estimated to exceed $3.5 million.

**THIRTY-FOURTH:** Plaintiffs have performed all duties and obligations on their part to be performed.

**AS AND FOR A FIRST CAUSE OF ACTION
FOR A DECLARATORY JUDGMENT
DISMISSING OWNERS' AND VESSEL'S
CLAIMS FOR GENERAL AVERAGE
CONTRIBUTION DUE TO THE BREACH
OF THE CONTRACT OF CARRIAGE**

**THIRTY-FIFTH:** Plaintiffs repeat and reallege each and every allegation set forth in paragraphs First through Thirty-Fourth as though set forth fully therein.

**THIRTY-SIXTH:** A dispute has arisen between Plaintiffs and Defendants in that the contract of carriage evidenced by the bills of lading, as well as Defendants' obligations under the Carriage of Goods by Sea Act, require Defendants to exercise due diligence to make the ship seaworthy and to properly man, equip, and supply the ship for the ocean voyage it was contractually bound to undertake.

11

**THIRTY-SEVENTH:** The general maritime law also requires Defendants to provide a seaworthy vessel that is tight, staunch and strong in order to carry Plaintiffs' cargo from the port of loading to the port of discharge in consideration for the freight duly paid by the Plaintiff cargo interests.

**THIRTY-EIGHTH:** A dispute has arisen in connection with the contract of carriage and the vessel's right to declare general average and/or salvage in that the vessel experienced a mechanical break down, which subjected Plaintiffs to claims for general average contribution and salvage which were the direct result of the vessel's unseaworthiness and Defendants' failure to provide a seaworthy vessel and/or to exercise due diligence to provide a seaworthy vessel before and at commencement of the voyage which was required under the Carriage of Goods by Sea Act and the contracts of carriage.

**THIRTY-NINTH:**    In order to resolve this controversy, Plaintiffs request that:
(a)  pursuant to 28 U.S.C.§2201, this court declare the respective rights and duties of the parties in this matter, and, in particular that the court declare that Defendants' breached the contract of carriage and their obligation to exercise due diligence to provide a seaworthy vessel before the vessel broke ground at the port of St. Petersburg, Russian Federation; and

(b) that as a result of Defendants' breach of the contract of carriage and their obligations under the general maritime law as well as the Carriage of Goods by Sea Act, they have no legal right to claim for general average; and

( c) that as a result of Defendants' breach of the contract of carriage and their obligations under the general maritime law as well as the Carriage of Goods by Sea Act, they must defend and

12

indemnify Plaintiffs for any claim or amounts paid to salvors pursuant to the salvage guarantees now in place; and

(d )that as a result of the forementioned unseaworthiness that the general average guarantees, general average bonds and salvage bonds be returned to Plaintiffs; and

(e) that Defendants' claims for general average and/or salvage contribution be dismissed with prejudice and with costs and attorneys fees.

**FORTIETH:**        By reason of the premises, Plaintiffs' damages as nearly as same can now be estimated, no part of which has been paid, is or will be their proportionate share of general average and/or salvage contribution as determined by the general average adjusters and/or the Council of Lloyds in an amount now estimated to be $3,500,000 or approximately fifteen percent of the guarantees now provided, which are in the amount of: (a) $399,149.46 for the Schedule A Plaintiffs, (b) $59,383.60 for the Schedule B Plaintiffs, and ( c) $21,729,259.36 for the Schedule C Plaintiffs, for a total guarantee amount of $22,187,792.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANTS FOR INDEMNNITY FOR
ANY SALVAGE CONTRIBUTION
ASSESSED / PAID BY PLAINTIFFS**

**FORTY-FIRST:**        Plaintiffs repeat and reallege each and every allegation set forth in paragraphs First through Fortieth as though set forth fully therein.

**FORTY-SECOND:**  Defendants' claims for general average are not cognizable under the contracts of carriage and/or the general maritime law and/or the Carriage of Goods by Sea Act due to the breach of owner's nondelegable duty to exercise due diligence to provide a

13

seaworthy vessel and to properly man, equip, and supply the ship for the ocean voyage it was contractually bound to undertake.

**FORTY-THIRD:**    The incident which gave rise to the claim for general average and for salvage was caused by the Defendants' failure to exercise due diligence to provide a seaworthy vessel and in derogation of Defendants' duty under the law.

**FORTY-FOURTH:**  Plaintiffs are entitled to indemnity under the contracts of carriage (bills of lading), general maritime law and/or common law from Defendants, for any sums due and payable or paid to  salvors for this voyage.

W  H  E  R  E  F  O  R  E, Plaintiffs pray:

1.    That process in due form of law according to the practice of this Court may issue against the Defendants.

2.    That if the defendants cannot be found within this District, that all of its property within this District be attached in the sum set forth in this complaint, with interest and costs.

3.    That a warrant for the arrest of the vessel, MV Atlantic Trader, in rem,  her engines, tackle apparel, etc.,  may issue, according to the practices of this Honorable Court in causes of admiralty and maritime jurisprudence, and that all persons having or claiming any interest therein be cited to appear and answer, under oath all and singular the matters aforesaid;

that plaintiff have a decree for its damages aforesaid, with interest and costs; and that the MV

Atlantic Trader be condemned and sold to satisfy plaintiffs' decree.

4.     That a decree be entered in favor of plaintiff against defendants and the vessel for

the amount of plaintiff's damages, including any amount(s) paid or assessed in general average

or salvage by the Council of Lloyds, together with interest and costs.

5.     Plaintiff further prays for such other, further and different relief as to this Court

may seem just and proper in the premises.

Dated: New York, New York
      April 15, 2008


                    HILL RIVKINS & HAYDEN
                    Attorneys for Plaintiffs,


By: _____
                    Raymond P. Hayden (RH-5733)
                    Gerard W. White (GW-9797)

                    45 Broadway, Suite 1500
                    New York, New York 10006
                    (212) 669-0600


29810\Pleadings\Complaint1

15

Exhibit B



**ATLANTIC RO-RO CARRIERS, INC.**
1351 BLOOMFIELD AVE., SUITE 6
CLIFTON, NEW JERSEY 07012

INTERNATIONAL BILL OF LADING
NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | BOOKING NO. | BILL OF LADING NO. |
|---|---|---|
| ALCOA-KOFEM KFT<br>VERSECI U 1-15, PF. 102<br>8000 SZEKESFEHERVAR<br>HUNGARY | | SPHU11080040 |

EXPORT REFERENCES:
91/4-2269

NUMBER OF ORIGINALS B/L: ZERO

| CONSIGNEE (COMPLETE NAME AND ADDRESS) | FORWARDING AGENT, F.M.C. NO. |
|---|---|
| COPPER & BRASS SALES DIVISION C/O<br>CORNERSTONE WAREHOUSING<br>2150 ENTERPRISE DRIVE<br>INDEPENDENCE,KS 67301,USA | |

| NOTIFY PARTY (COMPLETE NAME AND ADDRESS) | ALSO NOTIFY-ROUTING & INSTRUCTIONS |
|---|---|
| UPS SUPPLY CHAIN SOLUTIONS<br>5356 GA HIGHWAY 85, SUITE 100<br>FOREST PARK GA 30297, USA<br>CONTACT:BRIAN DE VILLE  bdeville@ups-scs.com<br>PHONE:404-914-9153<br>FAX:404-914-9394 | BALTIC MERCUR<br>47 STACHEK AVE, OFFICE 408<br>ST. PETERSBURG - 198097, RUSSIA<br>TEL: (7 812) 332-2787 OR 327-5728  FAX: (7 812) 320-8267 |

| INITIAL CARRIAGE BY (MODE) | PLACE OF INITIAL RECEIPT | POINT AND COUNTRY OF ORIGIN | DEMURRAGE/DETENTION TERMS AS PER BOOKING NOTE |
|---|---|---|---|

| VESSEL | VOY. | FLAG | PORT OF LOADING | LOADING PIER/ TERMINAL |
|---|---|---|---|---|
| ATLANTIC TRADER | R8-11 | MALTA | ST.PETERSBURG, RUSSIA | |

| PORT OF DISCHARGE | PLACE OF DELIVERY BY ON-CARRIER | PLACE OF DELIVERY BY ON-CARRIER |
|---|---|---|
| HOUSTON | | |

PARTICULARS FURNISHED BY SHIPPER – CARRIER NOT RESPONSIBLE

| Container No./Seal No.<br>Marks and Numbers | No. of Pkgs. | Description of Packages and Goods | Gross Weight | Measure |
|---|---|---|---|---|
| ACSU4316840,SEAL:2490602,328502 | 8 | AL.COILS  NET.W:17 490 KGS  BR.W:18 482 KGS<br>STUFFED INTO 1 X 40' CONTAINER  TARE:3 910 KGS<br>COPPER & BRASS SALES DIVISION/AM12459/20F495 | 22 392  KGS | |
| FCL / FCL | | SHIPPERS STOW,LOAD AND COUNT | | |

FREIGHT AND CHARGES PAYABLE AT

| ITEM | W/M | RATE | PREPAID* | COLLECT |
|---|---|---|---|---|
| Freight USD 1 940 LI/LO,other terms and surcharges as per agreement 06/0013 | | | | |

Declared Value Charges
(per Clause 16)        Value: $

TOTAL

A set of 3 Bills of Lading is hereby stated to be hereby issued by Carrier, all of the same tenor and date, one of which being accomplished the others shall be void. In witness of the number of original Bills of Lading must be surrendered for delivery of Goods

ON BEHALF OF MASTER

By:

ISSUED AT: ST.PETERSBURG    DATED:    MARCH    04    2008<br>MO/DAY/YR

### Bill of Lading Terms and Conditions

1. Definitions. In this Bill of Lading, and except as otherwise expressly provided:

(a) "Carrier" means and includes the ocean carrier named on the face side hereof, the Vessel, her owner, Master, operator, demise charterer, and if bound hereby, the time charterer, and any substitute carrier, whether the owner, operator, charterer or Master shall be acting as carrier or bailee, and their respective agents, officers and employees;

(b) "Vessel" means and includes the ocean vessel on which the Goods are shipped, named on the face hereof, any substitute vessel, and any feeder ship, ferry, barge, lighter or any other watercraft used by Carrier in the performance of this contract;

(c) "Merchant" means and includes the shipper, consignee, receiver, holder of this bill of lading, the owner of the Goods, and the person or entity entitled to the possession of the Goods, and their respective agents, representatives and employees;

(d) "Charges" means and includes freight and all expenses and money obligations incurred and payable by Merchant hereunder, including demurrage and deadfreight;

(e) "Goods" means and includes the cargo received from the shipper and described on the face side hereof and any Container not supplied by or on behalf of Carrier;

(f) "Container" means and includes any container, van, trailer, transportable tank, flat rack or any similar article of transport;

(g) "Package" means the single largest unit of Goods (e.g., Container, pallet, box, bale, vehicle, etc.) tendered to Carrier for transport hereunder;

(h) "Inland Carrier" means any barge line, vessel, trucker, or railroad with custody of the Goods under this Bill of Lading, and their respective agents and subcontractors;

(i) "On board" means and includes on board the Vessel when the Goods are being transported from a port and on board a means of conveyance of Inland Carrier en route to the port of loading for transport from an inland point; and

(j) "Subcontractor" means and includes all interests owning, operating or chartering the Vessel, any inland conveyance, terminal or warehouse, or otherwise performing services with respect to the Goods pursuant to contract with Carrier or Inland Carrier.

When used in this Bill of Lading, "apparent good order and condition" when used with reference to Goods that are metal or wood/paper products does not mean that, when received, such Goods or the packaging thereof were free of visible staining, chafing, cutting or breakage, or of moisture, or of rust, oxidation or other consequences thereof, or that the packaging and marking of the Goods were adequate to ensure their safe transit and proper delivery. If the shipper so requests, a substitute bill of lading will be issued omitting the foregoing definition and setting forth any notations as to staining, chafing, cutting, breakage, moisture, etc., that may appear on the mates' or tally clerks' receipts.

2. Clause Paramount.

Except as otherwise provided herein, this Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America ("COGSA"), which shall be deemed to be incorporated herein, and the provisions of which (except as otherwise specifically provided herein) shall govern before loading on and after discharge from the Vessel and throughout the entire time the Goods are in the custody of Carrier; provided, however, that if this Bill of Lading is issued for transport other than to or from the United States and the locality in which it is issued or delivered has in force a compulsorily applicable law of a nature similar to COGSA, this Bill of Lading shall be subject to the provisions of said law, but if there be none, then this Bill of Lading shall have effect subject to the Hague Rules (1924) as same may be enacted in the country of shipment or, if not there enacted, in the country of destination, or if not there enacted, as per the Hague Rules as promulgated by international convention, but in all instances, Article 9 thereof shall not apply and the limit of liability shall be as set forth in clause 18 hereof. In all other respects, nothing herein contained shall be deemed a surrender by Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under COGSA.

3. Jurisdiction and Claims.

Any dispute or claim arising under this Bill of Lading shall be decided exclusively by arbitration in New York before a single arbitrator pursuant to the rules of the Society of Maritime Arbitrators if not exceeding $50,000, and otherwise exclusively by the United States District Court for the Southern District of New York.

4. Notice of Loss/Time Bar.

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to Carrier or its agents at the port of discharge or the place of delivery, as the case may be, before or at the time of removal of the Goods into the custody of Merchant, such removal shall be prima facie evidence of the delivery by Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three (3) days of the delivery. In any event, Carrier shall be discharged from any liability unless proceedings pursuant to this Clause 4 are brought within one (1) year after delivery of the Goods or the date when the Goods should have been delivered.

5. Tariff.

The Goods carried hereunder are subject to all the terms of Carrier's applicable tariff(s) at the date of shipment, which are hereby incorporated herein. Copies of the relevant provisions of the applicable tariff(s)

are available from Carrier upon request. In the event of any conflict between this Bill of Lading and the tariff(s), this Bill of Lading shall prevail.

6. Method and Route of Transport.

Carrier may at any time and without notice to the Merchant: (a) Use any means of transport or storage whatsoever; (b) transfer the Goods from one conveyance to another including transshipping or carrying the same on a substitute vessel or on any other means of transport whatsoever and even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein, and delay forwarding awaiting a Vessel or conveyance whether in Carrier's own service or not; (c) sail without pilots, proceed via any route, proceed to, return to and stay at any port or place whatsoever (including the port of loading herein provided) in any order in or out of the route or in a contrary direction to or beyond the port of discharge once or oftener for bunkering or loading or discharging cargo or embarking or disembarking any person(s) whether in connection with the present, prior or subsequent voyage or any purpose whatsoever, and before giving delivery of the Goods at the port of discharge or the place of delivery herein provided and with liberties as aforesaid leave and then return to and discharge the Goods at such port, tow or be towed, make trial trips, adjust compasses, or repair or dry dock, with or without cargo onboard, and proceed at reduced speed in order to conserve bunkers or as the Master may consider necessary or reasonable; (d) load and unload the Goods at any port or place (whether or not any such port is named on the face hereof as the port of loading or port of discharge) and store the Goods at any such port or place; (e) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by Carrier the right to give orders or directions.

Anything done or not done in accordance with the provisions of this clause 6 and any delay arising therefrom shall be deemed to be within the contractual carriage and the scope of the intended voyage and shall not be a deviation.

7. Matters Affecting Performance.

If at any time the performance of the contract evidenced by this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind that cannot be avoided by the exercise of reasonable endeavors, Carrier (whether or not the transport is commenced) may without notice to Merchant treat the performance of this contract as terminated and place the Goods or any part of them at Merchant's disposal at any place or port that Carrier may deem safe and convenient, whereupon the responsibility of Carrier in respect of such Goods shall cease. Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation, and Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

8. Stowage and Special Handling.

Carrier may containerize any Goods. Containers may be stowed on deck or under deck and when so stowed shall be deemed for all purposes to be stowed under deck, including for General Average, COGSA and similar legislation. Carrier shall be entitled but under no obligation to open any Container at any time and to inspect the contents thereof. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or its contents or any part thereof, Carrier may abandon the carriage thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill of Lading. Merchant shall indemnify Carrier against all reasonable additional expense as incurred.

A loading certificate issued by the Classification Society's surveyor or any other competent person shall be conclusive evidence as to the fitness and safety at the beginning of the voyage of the refrigerated cargo installation for the reception, carriage and preservation of refrigerated cargo. Electric power is supplied on board or ashore to vehicles (including trailers, containers, flats, etc.) for heating, refrigeration, etc. without responsibility for any loss, damage or delay to Goods or equipment howsoever caused. Carrier shall not be obliged to provide for refrigerated storage ashore. Loading,

discharging, stowing and other handling of single pieces or packages exceeding three (3) tons gross weight shall be for risk and account of Merchant, who if so required by Carrier shall provide the necessary lifting gear.

Merchant shall assume full responsibility for and indemnify Carrier for any loss or damage to any Container or other equipment furnished by or on behalf of Carrier that occurs while such Container or equipment is in the possession of Merchant or any agent or contractor engaged by or on behalf of Merchant.

9. Loading and Discharging.

Unless otherwise agreed prior to shipment, loading, discharging and delivery of the Goods shall be arranged by Carrier's Agent. Landing, storing and delivery shall be for Merchant's account. Any lightering for loading or discharge to be for the account of Merchant and at the risk of the Goods. Loading and discharging may commence without previous notice.

Merchant shall tender the Goods for loading when the Vessel is ready to load and as fast as the Vessel can receive and – but only if required by Carrier – outside ordinary working hours notwithstanding any custom of the port, and failing same Carrier shall be relieved of any obligation to load the Goods or all of them, and the Vessel may leave the port without further notice and dead freight shall be payable by Merchant.

Carrier may discharge the Goods as fast as the Vessel can deliver and outside ordinary working hours notwithstanding any custom of the port, and failing acceptance of the Goods thereupon by Merchant, Carrier shall be at liberty to take such other action as may be permitted under this Bill of Lading, all of which shall be deemed a true fulfillment of the contract. Merchant shall bear all overtime charges in connection with tendering and delivery of the Goods as above.

Carrier may in its absolute discretion receive the Goods as full container load and deliver them as less than full container load and/or as break bulk cargo and/or deliver the Goods to more than one receiver. In such event, Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods that are found upon unpacking of the Container.

Merchant shall accept its reasonable proportion of unidentified loose cargo. If any consignee has a shortage in the marks or numbers called for by this Bill of Lading, unclaimed Goods of like kind and quality, but of different marks or numbers, or of no marks nor numbers, shall at Carrier's option be deemed to constitute a part of the Goods and be accepted by Merchant as good delivery under this Bill of Lading.

If the Goods are not claimed within thirty (30) days, or whenever in Carrier's opinion the Goods will become deteriorated, decayed or worthless, Carrier may at its discretion and subject to its lien sell, abandon or otherwise dispose of the Goods at the sole risk and expense of Merchant.

10. Deck Cargo.

Deck cargo (except Goods carried in Containers on deck) and live animals are received and carried solely at Merchant's risk (including accident or mortality of animals). Carrier shall not in any event be liable for any loss or damage thereto arising or resulting from any matters mentioned in COGSA Section 4, Subsection 2 (a) to (p), inclusive, or from any other cause whatsoever not due to the fault of Carrier, any warranty of seaworthiness in the premises being hereby waived by, and the burden of proving liability being in all respects upon, Merchant.

11. Notification and Delivery.

The port of discharge for Goods accepted for delivery to optional ports must be declared to the Vessel's Agents at the first of the optional ports not later than 48 hours before the Vessel's scheduled arrival there. In the absence of such declaration, Carrier may elect to discharge at the first or any other optional port, whereupon the contract of carriage shall then be deemed fulfilled. Unless expressly set forth on this Bill of Lading, delivery of the total quantity shipped under this Bill of Lading will be made at a single port only.

Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of Carrier, and failure to give such notification shall not subject Carrier to any liability or relieve Merchant of any obligation hereunder.

If Merchant fails to take delivery of the Goods or part of them in accordance with this Bill of Lading, Carrier may without notice unstow the Goods or that part thereof and/or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder and thereupon all liability whatsoever of Carrier in respect of the Goods or that part thereof shall cease.

12. Shipper-Packed Containers.

When Containers, palletized units, and all other packages (all hereinafter referred to as "cargo units") are not packed or loaded by Carrier, such cargo units shall be deemed shipped as "Shipper's weight load and count" and with no representation by Carrier as to the quantity, weight, condition, or existence of the contents thereof, as to which Carrier shall not be liable for nonreceipt or misdescription. Carrier shall have no responsibility or liability whatsoever therefor or for the packing, loading, securing and/or stowage of contents of such cargo units, or for loss or damage caused thereby or resulting therefrom, or for the physical suitability or structural adequacy of such cargo units properly to contain their contents.

Merchant, whether principal or agent, by packing or loading the cargo unit and/or by allowing the cargo unit to be so packed or loaded represents, guarantees and warrants that: (a) the Goods are properly described, marked and safely and securely packed in their respective cargo units; such cargo units are physically suitable, sound and structurally adequate property to contain and support the Goods during handling and on the transport, and the cargo units may be handled in the ordinary course without damage to themselves or to their contents, or to the Vessel or conveyance or to their other cargo, or property, or persons; (b) all particulars with regard to the cargo units and their contents, and the weight of each said cargo unit, are in all respects correct; (c) Merchant has ascertained and fully disclosed in writing to Carrier and any Inland Carrier on or prior to shipment, any condition, ingredient or characteristic of the Goods that might indicate they are inflammable, explosive, corrosive, radioactive, noxious, hazardous or dangerous in nature, or that might cause damage, injury or detriment to the Goods, or to the Vessel, conveyance or other cargo or to property or persons; and (d) Merchant has complied fully with all applicable statutes, ordinances and regulations with respect to labeling, packaging and preparation for shipment of all such Goods.

Merchant agrees fully to protect and indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or loss or damage to cargo or cargo unit or any other property, or to the Vessel or any other conveyance, or expense or fine arising out of damage to cargo or cargo unit or any other property, or arising out of or in any way connected with breach of any of the foregoing representations or warranties, howsoever occurring, even without fault of Merchant and even though such injury, death, loss or damage is caused in whole or in part by fault of Carrier or unseaworthiness.

13. Freight and Charges.

Freight and Charges, whether pre-payable or not and whether actually paid or not, shall be considered as fully earned upon receipt for loading and shall be paid, and be non-returnable, Vessel and/or Goods lost or

not lost. Interest at the rate of one percent (1%) per month or part thereof shall run from the date when freight and Charges are due. Freight and Charges are payable only in U.S. Dollars.

Merchant shall be liable for expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing of packing due to excepted causes, and for all extra handling of the Goods for any of the aforementioned reasons.

Any dues, duties, taxes and charges in respect of the transportation services to be provided by Carrier that any jurisdiction may levy, whether on the basis of amount of freight, weight of cargo, tonnage of the Vessel, or any other, and all fines and/or losses that Carrier, Vessel, or the Goods may incur through non-observance of any customs house and/or import or export regulations, shall be for Merchant's account.

In case of any incorrect declaration by Shipper of contents, weights, measurements or value of the Goods, Carrier may collect double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, Merchant shall upon request provide to Carrier the original invoice in respect of the Goods, and permit the contents to be inspected and the weight, measurement or value verified.

Merchant shall be liable for the payment of all Freight and Charges due hereunder, without discount, together with any court costs, expenses and reasonable attorneys' fees incurred in collecting any sums due Carrier. Payment to a freight forwarder, or anyone other than Atlantic Ro-Ro Carriers, Inc. or its authorized agent, shall not be deemed payment to Carrier and shall be made at Payor's sole risk, and merchant shall remain liable for all freight and other charges due hereunder notwithstanding any extension of credit by Carrier to such freight forwarder or other person.

14. Liens.

Carrier shall have a lien on the Goods and any documents relating thereto, which lien shall survive delivery, for all Freight and Charges due under this contract and any other contract, and all costs of recovering same and expenses incurred in preserving this lien, which may be enforced by public auction or private sale of the Goods without notice to Merchant.

15. Identity of Carrier.

Other than the ocean Carrier named on the face hereof, no person whatsoever (including the Master, officers and crew of the Vessel, and all agents, employees, representatives, and Subcontractors) is or shall be deemed to be liable with respect to the Goods as carrier, bailee or otherwise howsoever, in contract or in tort. If, however, it should be adjudged that any other than said ocean carrier is under any responsibility with respect to the Goods, all limitations of and exonerations from liability otherwise provided by law or by the terms hereof shall be available to such other persons. In contracting for the foregoing exemptions, limitations and exonerations from liability, Carrier is acting as agent and trustee for and on behalf of all persons described above, all of whom shall to such extent be deemed to be a party in the contract evidenced by this Bill of Lading.

16. Subcontracting.

Carrier and Inland Carrier each may subcontract on any terms the whole or any part of the transport, loading, unloading, storing or other handling of the Goods undertaken by Carrier. Merchant shall not hold, or seek to hold, any agent or Subcontractor, or any vessel owned or chartered by any of them, under any liability whatsoever to Merchant in connection with the Goods, and if any such claim or allegation should nevertheless be made Merchant shall indemnify Carrier against all consequences thereof. Without prejudice to the foregoing, every such agent and subcontractor shall have the benefit of all provisions herein benefiting Carrier as if such provisions were expressly for their benefit, and all limitation of and exonerations from liability provided to Carrier by law and by the terms hereof shall be available to them, and, in entering into this contract Carrier, to the extent of such provisions, does so not only on its own behalf but also as agent and trustee for such agents and subcontractors.

17. Delay.

Carrier shall not be liable for any consequential or special damages, or for any loss sustained through delay of the Goods. If Carrier shall nonetheless be held legally liable for any such damages or loss, such liability shall in no event exceed the Freight paid for the transport of the Goods hereunder. Carrier shall have the option of replacing or repairing lost or damaged Goods.

18. Limitation of Liability.

For all shipments to or from ports of the United States, Carrier shall not be liable for loss or damage to the Goods in an amount exceeding U.S. $500 or, where the Hague Rules are applicable pursuant to Clause 2, GBP 100 sterling (which shall not be based on the gold value) per package (or for Goods not shipped in Packages, per customary freight unit), unless the value (and nature) of the Goods higher than this amount has been declared in writing by Merchant before receipt of the Goods by Carrier and inserted on the face of this Bill of Lading and extra freight has been paid as required, in which event Carrier's liability shall not exceed such higher value (or pro rata for loss or damage to less than all the Goods). If the actual value of the Goods per package or unit exceeds such declared value, the value declared shall be deemed to be the value. If the declared value has been misstated or is materially higher than the actual value, Carrier shall not be liable to pay any compensation.

Nothing contained in this Bill of Lading shall deprive the Ship, Shipowner or Carrier of the right to claim the benefit of any statutory exemption from or limitation of liability.

Carrier shall be entitled to the full benefit of, and right to all limitations of, or exceptions from, liability authorized by any provisions of Sections 4261 to 4288, inclusive, of the Revised Statutes of the United

States and amendments thereto and of any other provisions of the laws of the United States or of any other country whose laws shall apply.

Notwithstanding any other provision of this Bill of Lading, Carrier shall not be liable for any loss, damage, delay or failure of performance resulting from act of war, acts of public enemies, thieves, pirates and assailing thieves including robbers and hijackers. The defenses and limits of liability provided for in this Bill of Lading shall apply in any action against Carrier for loss or damage to the Goods, whether founded in tort or in contract. The terms of this Bill of Lading shall govern the responsibility of Carrier in connection with or arising out of the supplying of a Container to the Merchant, whether before or after the Goods are received by Carrier or Inland Carrier for transport or delivery thereof to Merchant.

19. Responsibility Clause for Combined Transport.

Where the nature of this contract of carriage is one of through transit of containerized or otherwise unitized Goods commencing at and terminating at interior places that are expressly stated in this Bill of Lading, Carrier shall be responsible for the Goods in the manner herein provided from the time they are received for shipment by its agents until delivery at the specified place of final destination, but in all other instances, Carrier shall not be responsible for loss of or damage to the Goods during the periods before receipt of the Goods at the sea terminal at the port of loading or after delivery of the Goods in question from the sea terminal at the port of discharge. If it cannot be established in whose custody the Goods were when any damage or loss occurred, the damage or loss shall be deemed to have occurred during the sea voyage and the appropriate COGSA (or, if inapplicable, other Hague Rules) provision shall apply.

20. Terminal Clause.

The appropriate Carriage of Goods by Sea Act is hereby deemed to apply to the B/L during the entire period the Goods are laid at the sea terminals; except as so provided, Carrier accepts no responsibility whatsoever in relation to the Goods stored at any other yards or warehouses, and during the whole period of such storage the Goods remain at the risk and expense of Merchant. This clause to be deemed agreed and to remain in force notwithstanding any local legislation.

21. New Jason Clause.

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

General Average shall be settled according to the York Antwerp Rules 1990 and be adjusted at any port or place by one or more General Average Adjuster(s) appointed by Carrier. If a salving Vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving Vessel or Vessels belonged to strangers. All Goods (including utilized and deck cargo and live animals) shall contribute to and receive contribution in General Average. Carrier shall be under no obligation to exercise any lien for General Average Contribution due to Merchant.

By receiving the Goods, Merchant shall personally be liable in respect of the contribution to General Average whether or not an Average Bond or other security has been demanded, provided Carrier notifies Merchant within 90 days after receipt by Merchant of the Goods of Carrier's intention to declare General Average. Merchant undertakes, if so requested by Carrier, to disclose to the General Average Adjuster the CIF value of the Goods and the name and address of the cargo insurer. Unless Merchant provides Carrier with an undertaking from such insurers to pay any General Average contribution, Merchant shall on demand give Carrier such other security in respect of General Average as Carrier may require.

22. Both-to-Blame Collision Clause.

If the Vessel comes into collision with another Vessel as a result of the negligence of the other Vessel, and any act of negligence or default of the Master, mariner, pilot or the servants of Carrier in the navigations or in the management of the Vessel, Merchant will indemnify Carrier against all loss or liability to the other or non-carrying Vessel or her owners insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the Goods paid or payable by the other or non-carrying Vessel or her Owner to the owner of the Goods and set off, recouped or recovered by the other or non-carrying Vessel or her Owner as part of its claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the owner, operator or those in charge of any vessel or vessels or objects other than or in addition to the colliding vessels or objects are at fault in respect of a collision or contact, and is to remain in effect in other jurisdictions even if unenforceable in the United States.

23. Alteration.

No agent, officer or employee of Carrier shall have authority to waive or vary any provision of this Bill of Lading unless in writing and expressly authorized or ratified in writing by Carrier.

Exhibit C

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

                        Plaintiffs,

                  - Against -

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                       Defendants.
------------------------------------------------------------------------X

Index No.:
**08 Civ. 3597 PKL**

**PLAINTIFFS' REQUEST**
**FOR PRODUCTION OF**
**DOCUMENTS**

TO:    M/V ATLANTIC TRADER
        c/o Freehill Hogan & Mahar
        80 Pine Street
        New York, New York  10005-1759
        Attention:  Wayne D. Meehan, Esq.
        Attorneys for Defendants,
        Atlantic Trader Navigation Ltd.,
        JSB Baltik Merkur

        Plaintiffs, by their attorneys, HILL RIVKINS & HAYDEN LLP, pursuant to Rules 26(d),

30(a)(2)(A)(iii) and 34 of the Federal Rules of Civil Procedure, request production of the

following

documents for inspection and copying: ⸀

1.      All deck and engine log books, both rough and smooth, for the voyage commencing September 1, 2007, until present.

2.      All statements by the vessel's officers relating to the loss of main engine power on/about March 18, 2008.

3.      All notes, workbooks, memoranda, emails and/or maintenance recommendations kept by the vessel's officers and/or superintendents relating to the repairs undertaken during the course of the pending voyage and from September 1, 2007 until present.

4.      All statements, notes, workbooks, and/or memoranda by the vessel's officers and Owner's representatives, relating to the anchor dragging on/about March 20, 2008 and the resulting salvage operation.

5.      All correspondence, email and records of communication to and from the vessel from February 12, 2008 until present, including but not limited to, facsimile and e-mails, correspondence, telephone calls between the vessel, its owners, repairers and/or salvors.

6.      All correspondence between the vessel and any repair contractor(s) relating to the repair of the main engine, the main engine turbo charger and/or auxiliary engine aboard the vessel from September 1, 2006 until present.

7.     The vessel's crew list as of sailing from St. Petersburg on/about February 29, 2008.

8.     The vessel's night orders, both deck and engine, for the voyage commencing February 12, 2008 until present.

9.     All classification report(s) and/or surveys for the repair/loss of main engine power on/about March 19, 2008 at Scapa Flow.

10.     All classification report(s) and/or surveyors for the vessel dating from March 19, 2006 until present.

11.     All communication between the vessel owners and its classification society regarding the status and/or deficiencies in the Atlantic Trader from March 19, 2006 until present.

12.     All records of state inspections / detentions from March 19, 2006 until present.

13.     All record(s) of the vessel's position from sailing St. Petersburg on/about February 29, 2008 with arrival at the Port of Houston, Texas on/about April 14, 2008.

14.     All maintenance and repair records for the main engine turbo charger aboard the vessel from March 19, 2006 until present.

15.    All maintenance and repair records for all equipment that was the subject of repair during the present voyage from March 19, 2006 until present.

16.    All vessel positioning data including, but not limited to, charts, plotted positions, AIS positions, GPS logs, GPS downloads, course recorder data, engine order data for the present voyage, including but not limited to the timeframe during which the vessel lost power, drifted, anchored, and underwent repair.

17.    All vessel records detailing the number of spare parts aboard the vessel relating to the main engine, turbo charger, and any other equipment /machinery that was the subject of repair during the voyage from Baltimore to St. Petersburg to Scapa Flow and Houston.

18.    All reports issued by the Master and/or Chief Engineer or other officers/crew relating to the loss of propulsion and dragging anchor on/about March 19, 2008.

19.    All correspondence to/from the vessel, including but not limited correspondence from the vessel to / from its owners/operators/charterers  and/or salvors relating to the loss of propulsion, the decision to anchor and the decision as to the location where the repairs to the vessel were to be made, dragging the anchor and the subsequent salvage operation.

20.    All maintenance and repair records for the main engine turbo charger aboard the

vessel from March 19, 2006, until present.

21.     Copies of all contracts with repair contractors and/or invoices for the purchase of parts for the repair of the main engine, turbo charger or any other machinery / equipment during the voyage from Baltimore to St. Petersburg to Scapa Flow and to Houston.

22.     All meteorological records for the voyage, including correspondence/e-mails to any weather routing service, weather facsimiles obtained by the vessel, weather maps, weather forecasts, weather routing, and barographs.

23.     All company manuals including but not limited to ISM materials / reports relating to planned maintenance and operation of the vessel's main engine and turbo chargers and/or any other equipment which needed repair or maintenance during the subject voyage.

24.     All records concerning the fuel oil consumed during the subject voyage including all records concerning the fuel oil quality, including those records relating to fuel oil/ bunkers aboard and/or consumed during the voyage, when it was received, qualitative reports, and any reports relating to contaminated fuel.

25.     All survey reports issued by the vessel's agents and/or contracts relating to the loss of propulsion and the dragging of the anchor at Scapa Flow.

Plaintiffs reserve their rights to supplement these Requests up to the time of trial of this action.

Dated: New York, New York
          April ____, 2008

                                        HILL RIVKINS & HAYDEN
                                        Attorneys for Plaintiffs,

                                        By: _____
                                            Raymond P. Hayden (RH-5733)
                                            Gerard W. White (GW-9797)

                                        45 Broadway, Suite 1500
                                        New York, New York 10006
                                        (212) 669-0600

29810\Pleadings\Request For Production

Exhibit D

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------------X

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

Plaintiffs,

- Against -

**NOTICE OF DEPOSITION**
**OF CHIEF ENGINEER**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

Defendants.

-----------------------------------------------------------------------------X

TO:     M/V ATLANTIC TRADER
        c/o Freehill Hogan & Mahar
        80 Pine Street
        New York, New York 10005-1759
        Attention: Wayne D. Meehan, Esq.
        Attorneys for Defendants,
        Atlantic Trader Navigation Ltd.,
        JSB Baltik Merkur

**PLEASE TAKE NOTICE** that pursuant to Rules 26 (d) and 30 (a)(2)(A)(iii) of the

Federal Rules of Civil Procedure that plaintiffs, AIG Global Marine and Energy, et al., by and

through their attorneys Hill Rivkins & Hayden LLP will take the deposition upon oral examination by stenographic means of the Chief Engineer of the M/V ATLANTIC TRADER (during the voyage from St. Petersburg to Houston, Texas) before a certified court reporter or other person authorized to administer oaths, at the Houston offices of the undersigned attorneys at 712 Main Street, Suite 1515, Houston, Texas on April 23, 2008, beginning at 9:30 a.m. and continuing from day to day until completed.

This deposition is taken pursuant to F.R.C.P. Rule 30(a)(2)(A)(iii) in that the deponent serves as an officer/crew member on a Vessel which is soon to depart Houston, Texas for a foreign port and will be unavailable for examination in the United States unless deposed before that time.

Testimony is to include those matters/documents relating to the loss of the main engine/propulsion aboard the M/V ATLANTIC TRADER on/about March 19,20, 2008, and the dragging of anchor off Scapa Flow and the circumstances giving rise to a contract with salvors.

Dated: New York, New York
            _____, 2008

HILL RIVKINS & HAYDEN
Attorneys for Plaintiffs,

By: _____
Raymond P. Hayden (RH-5733)
Gerard W. White (GW-9797)

45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

29810\Pleadings\Notice Dep Chief Engineer

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

                    Plaintiffs,

                    - Against -

**NOTICE OF DEPOSITION**
**OF DUTY ENGINEER**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                    Defendants.
-------------------------------------------------------------------------X

TO:   M/V ATLANTIC TRADER
      c/o Freehill Hogan & Mahar
      80 Pine Street
      New York, New York 10005-1759
      Attention: Wayne D. Meehan, Esq.
      Attorneys for Defendants,
      Atlantic Trader Navigation Ltd.,
      JSB Baltik Merkur


**PLEASE TAKE NOTICE** that pursuant to Rules 26(d) and 30(a)(2)(A)(iii) of the

Federal Rules of Civil Procedure that plaintiffs, AIG Global Marine and Energy, et al., by and

through their attorneys Hill Rivkins & Hayden LLP will take the deposition upon oral examination by stenographic means of the Duty Engineer of the M/V ATLANTIC TRADER (at the time when the vessel experienced loss of propulsion on/about March 19/20, 2008 during the voyage from St. Petersburg to Houston, Texas) before a certified court reporter or other person authorized to administer oaths, at the Houston offices of the undersigned attorneys at 712 Main Street, Suite 1515, Houston, Texas on April 23, 2008, beginning at 9:30 a.m. and continuing from day to day until completed.

This deposition is taken pursuant to F.R.C.P. Rule 30(a)(2)(A)(iii) in that the deponent serves as an officer/crew member on a Vessel which is soon to depart Houston, Texas for a foreign port and will be unavailable for examination in the United States unless deposed before that time.

Testimony is to include those matters/documents relating to the loss of the main engine/propulsion aboard the M/V ATLANTIC TRADER on/about March 19,20, 2008, and the dragging of anchor off Scapa Flow and the circumstances giving rise to a contract with salvors.

Dated: New York, New York
_____, 2008

> HILL RIVKINS & HAYDEN
> Attorneys for Plaintiffs,
>
> By: _____
> Raymond P. Hayden (RH-5733)
> Gerard W. White (GW-9797)
>
> 45 Broadway, Suite 1500
> New York, New York 10006
> (212) 669-0600

29810\Pleadings\Notice Dep Duty Engineer

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

Plaintiffs,

- Against -

**NOTICE OF DEPOSITION**
**OF FIRST ASSISTANT**
**ENGINEER**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

Defendants.

-------------------------------------------------------------------------X

TO:   M/V ATLANTIC TRADER
      c/o Freehill Hogan & Mahar
      80 Pine Street
      New York, New York  10005-1759
      Attention:  Wayne D. Meehan, Esq.
      Attorneys for Defendants,
      Atlantic Trader Navigation Ltd.,
      JSB Baltik Merkur

**PLEASE TAKE NOTICE** that pursuant to Rules 26(d) and 30(a)(2)(A)(iii) of the

Federal Rules of Civil Procedure that plaintiffs, AIG Global Marine and Energy, et al., by and

through their attorneys Hill Rivkins & Hayden LLP will take the deposition upon oral examination by stenographic means of the First Assistant Engineer of the M/V ATLANTIC TRADER (during the voyage from St. Petersburg to Houston, Texas) before a certified court reporter or other person authorized to administer oaths, at the Houston offices of the undersigned attorneys at 712 Main Street, Suite 1515, Houston, Texas on April 23, 2008, beginning at 9:30 a.m. and continuing from day to day until completed.

This deposition is taken pursuant to F.R.C.P. Rule 30(a)(2)(A)(iii) in that the deponent serves as an officer/crew member on a Vessel which is soon to depart Houston, Texas for a foreign port and will be unavailable for examination in the United States unless deposed before that time.

Testimony is to include those matters/documents relating to the loss of the main engine/propulsion aboard the M/V ATLANTIC TRADER on/about March 19,20, 2008, and the dragging of anchor off Scapa Flow and the circumstances giving rise to a contract with salvors.

Dated: New York, New York
            _____, 2008

                            HILL RIVKINS & HAYDEN
                            Attorneys for Plaintiffs,

                        By: _____
                            Raymond P. Hayden (RH-5733)
                            Gerard W. White (GW-9797)

                            45 Broadway, Suite 1500
                            New York, New York 10006
                            (212) 669-0600

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

                    Plaintiffs,

          **- Against -**

                                                **NOTICE OF DEPOSITION**
                                                  **OF MASTER**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                    Defendants.
------------------------------------------------------------------------X

TO:    M/V ATLANTIC TRADER
       c/o Freehill Hogan & Mahar
       80 Pine Street
       New York, New York  10005-1759
       Attention:  Wayne D. Meehan, Esq.
       Attorneys for Defendants,
       Atlantic Trader Navigation Ltd.,
       JSB Baltik Merkur

       **PLEASE  TAKE  NOTICE** that  pursuant  to  Rules  26(d)  and  30(a)(2)(A)(iii)  of  the

Federal Rules of Civil Procedure that plaintiffs, AIG Global Marine and Energy, et al., by and

through their attorneys Hill Rivkins & Hayden LLP will take the deposition upon oral examination by stenographic means of the Master of the M/V ATLANTIC TRADER (who acted as Master during the voyage from St. Petersburg to Houston, Texas) before a certified court reporter or other person authorized to administer oaths, at the Houston offices of the undersigned attorneys at 712 Main Street, Suite 1515, Houston, Texas on April 23, 2008, beginning at 9:30 a.m. and continuing from day to day until completed.

This deposition is taken pursuant to F.R.C.P. Rule 30(a)(2)(A)(iii) in that the deponent serves as an officer/crew member on a Vessel which is soon to depart Houston, Texas for a foreign port and will be unavailable for examination in the United States unless deposed before that time.

Testimony is to include those matters/documents relating to the loss of the main engine/propulsion aboard the M/V ATLANTIC TRADER on/about March 19,20, 2008, and the dragging of anchor off Scapa Flow and the circumstances giving rise to a contract with salvors.

Dated: New York, New York
_____, 2008

                    HILL RIVKINS & HAYDEN
                    Attorneys for Plaintiffs,

                    By: _____
                    Raymond P. Hayden (RH-5733)
                    Gerard W. White (GW-9797)

                    45 Broadway, Suite 1500
                    New York, New York 10006
                    (212) 669-0600

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

Plaintiffs,

- **Against** -

**NOTICE OF DEPOSITION**
**OF NAVIGATIONAL**
**OFFICER**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

Defendants.

-----------------------------------------------------------------------------X

TO:    M/V ATLANTIC TRADER
       c/o Freehill Hogan & Mahar
       80 Pine Street
       New York, New York  10005-1759
       Attention:  Wayne D. Meehan, Esq.
       Attorneys for Defendants,
       Atlantic Trader Navigation Ltd.,
       JSB Baltik Merkur

**PLEASE TAKE NOTICE** that pursuant to Rules 26(d) and 30(a)(2)(A)(iii) of the

Federal Rules of Civil Procedure that plaintiffs, AIG Global Marine and Energy, et al., by and

through their attorneys Hill Rivkins & Hayden LLP will take the deposition upon oral examination by stenographic means of the Navigational Officer of the M/V ATLANTIC TRADER (at the time when the vessel dragged anchor at Scapa Flow, United Kingdom on/about March 19/20, 2008 during the voyage from St. Petersburg to Houston, Texas) before a certified court reporter or other person authorized to administer oaths, at the Houston offices of the undersigned attorneys at 712 Main Street, Suite 1515, Houston, Texas on April 23, 2008, beginning at 9:30 a.m. and continuing from day to day until completed.

This deposition is taken pursuant to F.R.C.P. Rule 30(a)(2)(A)(iii) in that the deponent serves as an officer/crew member on a Vessel which is soon to depart Houston, Texas for a foreign port and will be unavailable for examination in the United States unless deposed before that time.

Testimony is to include those matters/documents relating to the loss of the main engine/propulsion aboard the M/V ATLANTIC TRADER on/about March 19,20, 2008, and the dragging of anchor off Scapa Flow and the circumstances giving rise to a contract with salvors.

Dated:  New York, New York
              _____, 2008

                              HILL RIVKINS & HAYDEN
                              Attorneys for Plaintiffs,

                         By: _____
                              Raymond P. Hayden (RH-5733)
                              Gerard W. White (GW-9797)

                              45 Broadway, Suite 1500
                              New York, New York 10006
                              (212) 669-0600

29810\Pleadings\Notice Dep Navigational Officer

Exhibit E

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

                       Plaintiffs,

          -   **Against -**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                  Defendants.
-----------------------------------------------------------------------------X

Index No.:
**08 Civ. 3597 PKL**

**NOTICE OF**
**INSPECTION**

TO:   M/V ATLANTIC TRADER
       c/o Freehill Hogan & Mahar
       80 Pine Street
       New York, New York  10005-1759
       Attention:  Wayne D. Meehan, Esq.
       Attorneys for Defendants,
       Atlantic Trader Navigation Ltd.,
       JSB Baltik Merkur

      Plaintiffs by their attorneys, Hill Rivkins & Hayden LLP, pursuant to Rules 26(d),

30(a)(2)(A)(iii) and 34 of the Federal Rules of Civil Procedure, request the inspection of the M/V

ATLANTIC TRADER, by its appointed surveyor(s) upon arrival of the vessel in Houston, Texas on/about April 23, 2008, as follows:

     1.     Scott Phillipps or his substitute from the marine surveying firm Noble Denton, will be granted reasonable access to the vessel, deck, bridge, its engine room, machinery and spaces, in order to determine the cause and circumstances giving rise to the engine blackout/loss of power, the subsequent dragging of anchor and requests for salvage, that occurred on March 19/20, 2008; and dates thereafter;

     2.     Plaintiffs' surveyor will also be provided with those documents requested by Plaintiffs' Request for Production of Documents which was previously provided;

     3.     Plaintiffs' designated surveyor, will be a representative of Noble Denton or other surveyor appointed by Plaintiffs will be granted reasonable access to inspect, photograph the vessel, its bridge and deck as may be required to determine the facts relating to the dragging of anchor and request for salvage; and

     4.     Access to the vessel for the purpose of taking photographs, inspection, shall also be provided.

Dated: New York, New York
       April 21, 2008

                     HILL RIVKINS & HAYDEN LLP
                     Attorneys for Plaintiffs

             By: _____
                   Raymond P. Hayden
                   Gerard W. White
                   45 Broadway, Suite 1500
                   New York, New York  10006
                   (212) 669-0600

Exhibit F

**Gerard W. White**

| | |
|---|---|
| **From:** | Gerard W. White |
| **Sent:** | Friday, April 18, 2008 5:22 PM |
| **To:** | 'MEEHAN, WAYNE' |
| **Subject:** | RE: Atlantic Trader |

Wayne / Bill

Thank you for your message below. Please note the following:

1    Please confirm that you represent the vessel, in rem.

2.    As far as security is concerned, we understand that the posting of security by a London P and I Club is not a feasible option, and that Owners would be amenable to posting security by way of a cash deposit to be held in escrow by Freehill Hogan & Mahar. The security on deposit would then be held pursuant to an escrow agreement.  You indicated that Owners were agreeable to security being posted in the amount of $2.26 million, the level of security posted by underwriters in the salvage guarantees. Yesterday evening, you expressed a preference for a sum certain. We suggested that 2.6 million, which would incorporate, one year of interest at 8% ( 180K) plus an allowance for costs would result in a figure of 2.6 million. We further indicated that another interest was to furnish documents to us and we would like to incorporate that claim into security. We furnished documents this morning, and the salvage guarantees were in the approximate amount of $80,000.

Perhaps, the issue concerning interest / costs could be resolved by Owner posting 2.45 milliion in NY in an interest bearing account. The interest would follow the principal amount.

3    Please review the list of documents and advise which documents will be made available in Houston in order to avoid any problems.

4    Based on our telephone conversation yesterday evening, we understood that it was your preference to allow testimony to go forward in Baltimore, Maryland where the vessel was expected to call on June 23 – 26, 2008. As for the availability of the officers/crew, we understood that the Owner was willing to confirm that the same crew would be aboard in Baltimore. Ray Hayden had asked for the further representation that in the event they were not, then Owners would agree to produce them in the US. We remain amenable to such scheduling providing we have assurance concerning the officers/crew availability.

5    My weekend contact details are as follows:

Mobile:  732-610-6450        Home : 732-566-7619

In addition, I will check my office email at 12:00 PM/

Should you have any questions, please contact the undersigned.

Regards,
Jerry White
HILL RIVKINS
212-669-0606 (OFFICE DIRECT)

-----Original Message-----
**From:** MEEHAN, WAYNE [mailto:MEEHAN@FREEHILL.COM]
**Sent:** Friday, April 18, 2008 4:57 PM
**To:** Gerard W. White
**Subject:** Atlantic Trader

Dear Gerry,

In accordance with your request, we are writing to confirm the following discussed earlier today:

1. We represent the vessel's owners, managers and charterers. We believe you have identified the correct corporate entities in the complaint but will confirm.

2. You have requested security in the amount of $2.7 million. We understand that you will not accept an Ingosstrakh Letter of Undertaking. We have spoken with owners, and they are prepared to provide a cash bond in the amount of $2.26 million to be held pursuant to an escrow agreement. We have advised owners that you are insisting on $2.7 million, and will advise of their response.

3. We confirm that owners will permit your surveyor to go onboard to conduct inspections in Houston, and will provide routine vessel documents to facilitate that inspection. Please understand that all inspections will be carried out in the presence of owners' surveyor. Further, we will provide your surveyor with the assistance required to carry out meaningful inspections, but we will not permit your surveyor to interview the crew regarding the circumstances surrounding the incident(s) which are the subject of the litigation.

4. As advised, owners do not consent to depositions of the crew in Houston next week. Owners agree to provide the crew members for depositions, but we do not have authority to agree to produce the witnesses for depositions in the U.S. We have advised owners that you insist that the depositions be taken in the U.S., failing which you will make an application for expedited depositions in Houston next week. We have also advised owners that in order for you to refrain from making application for expedited discovery next week, you insist on a representation that you will be able to take the depositions of the crew members onboard the vessel in Baltimore in mid-June, or if for some reason the crew members are no longer onboard, that owners will produce those witnesses in the U.S.

As mentioned above, I hope to receive word on these issues overnight and will make myself available to discuss with you over the weekend. For your information, my contact details are as follows:

Meehan@freehill.com
(212) 381-3011 (direct dial)
(973) 509-7499 (home)
(917) 744-6562 (mobile)

I would appreciate it if you would also provide me with your weekend contact details.

Best regards,

Wayne D. Meehan

FREEHILL HOGAN & MAHAR, LLP

----------------------------------------------

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone - (212) 425-1900. Thank you.

**Gerard W. White**

**From:** Gerard W. White
**Sent:** Monday, April 21, 2008 1:03 PM
**To:** 'MEEHAN, WAYNE'
**Subject:** 29810 Atlantic Trader ; 08 Civ. 3597 - AIG GOLBAL MARINE et al. v. MV ATLANTIC TRADER et al.

Wayne:

Further to our telephone conversation on Saturday, April 19th , inasmuch as we have not come to an agreement concerning the scheduling of deposition testimony and the production of documents, our offices anticipate filing an Order to Show Cause for Expedited Discovery this afternoon.

I left a message on your phone this morning at 11:30 AM to discuss this further. Since I have not heard from you, it is my understanding that the position of your client has not changed.

Should you have any questions, please contact the undersigned.

Regards,
Jerry White
HILL RIVKIINS
212-669-0606

**Gerard W. White**

| | |
|---|---|
| **From:** | MEEHAN, WAYNE [MEEHAN@FREEHILL.COM] |
| **To:** | Gerard W. White |
| **Sent:** | Monday, April 21, 2008 1:15 PM |
| **Subject:** | Read: 29810 Atlantic Trader ; 08 Civ. 3597 - AIG GOLBAL MARINE et al. v. MV ATLANTIC TRADER et al. |

Your message

   To:      MEEHAN@FREEHILL.COM
   Subject:

was read on 4/21/2008 1:15 PM.

1

Exhibit G

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS, INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

                   Plaintiffs,

        -   **Against** -

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

                  Defendants.
-------------------------------------------------------------------X

Index No.:
**08 Civ. 3597 PKL**

**ORDER GRANTING**
**EXPEDITED**
**DISCOVERY PURSUANT**
**TO FRCP 26(d),**
**30(a)(2)(A)(iii) And 34**

TO:    M/V ATLANTIC TRADER
        c/o Freehill Hogan & Mahar
        80 Pine Street
        New York, New York  10005-1759
        Attention:  Wayne D. Meehan, Esq.
        Attorneys for Defendants,
        Atlantic Trader Navigation Ltd.,
        JSB Baltik Merkur

Plaintiffs have moved by way of an Order to Show Cause pursuant to Rule 26(d),

30(a)(2)(A)(iii) and 34 of the Federal Rules of Civil Procedure, seeking leave to commence

expedited discovery and to conduct an immediate inspection of the defendant Vessel, Atlantic

Trader, before it leaves the port of Houston, Texas. Good cause for the inspection of the vessel

by Plaintiffs' surveyor has been shown, as was the need for an immediate ex parte order

permitting discovery to proceed as follows:

1. Depositions of the Vessel's officers – the Captain, the Navigation Officer at the time the
   vessel dragged anchor off Scapa Flow, Chief Engineer, First Assistant Engineer and
   Engineer on Watch during the engine blackout/loss of power, may go forward in
   Houston, Texas, where the Vessel is due to arrive on April 22/23, 2008 and shall proceed
   from day to day thereafter until completed.

2. Plaintiffs appointed marine surveyors shall be granted "reasonable access" to the Vessel
   while it is in port at Houston, Texas, in order to conduct a survey/investigation and to
   take photographs of the Vessels' engine room, machinery, bridge, deck and spaces in
   order to determine the cause and circumstances giving rise to the engine blackout/loss of
   power that occurred on March 19/20, 2008, and the circumstances under which the
   anchor was dragged and salvage ensued; and

3. Defendants shall provide those documents and records aboard the Vessel or otherwise
   maintained by Defendants in advance of the taking of the depositions of the ship's
   officers, as set forth in the attached Request for Production of Documents Pursuant to
   Rule 34 of the Federal Rules of Civil Procedure, and otherwise provide documents to
   Plaintiffs' surveyor in order that a survey/inspection may go forward in Houston, Texas,
   so the facts and circumstances giving rise to the engine failure, dragging of anchor, and
   contract for salvage may be ascertained.

**IT IS FURTHER ORDERED** that this Order be served upon the Vessel when it berths in Houston, Texas and an additional copy be sent by facsimile to: Freehill Hogan & Mahar, 80 Pine Street, New York, New York 10005-1759, (212 425-1901), attention: Wayne D. Meehan, Esq., attorneys for Atlantic Trader Navigation Ltd., JSC Baltik Merkur and M/V ATLANTIC TRADER, in rem. and upon Atlantic Ro-Ro Carriers, Inc., 1051 Bloomfield Avenue, Suite 6, Clifton, New Jersey, facsimile No. (973) 815-1050

Dated: _____

_____
United States District Judge

29810\Pleadings\Order of Inspection

3

Raymond P. Hayden
Gerard W. White
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs

45 Broadway, Suite 1500
New York, New York, 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------X
AIG GLOBAL MARINE AND ENERGY, ACE EUROPEAN
GROUP LTD., AIG EUROPE SA , COLUMBIA FOREST
PRODUCTS,  INC., COPPER & BRASS, MACSTEEL
SERVICE CENTERS USA, TSA PROCESSING, METALS
USA (LIBERTY) and RUSAL AMERICA CORP.,

Index No.:
**08 Civ. 3597 PKL**

                              Plaintiffs,

                    **- Against -**

M/V ATLANTIC TRADER, *in rem*, ATLANTIC
TRADER NAVIGATION LTD., JSC BALTIK MERKUR,
And ATLANTIC RO-RO CARRIERS, INC., *in personam*,

**PLAINTIFFS' REQUEST**
**FOR PRODUCTION OF**
**DOCUMENTS**

                              Defendants.
----------------------------------------------------------------------------X

TO:     M/V ATLANTIC TRADER
        c/o Freehill Hogan & Mahar
        80 Pine Street
        New York, New York  10005-1759
        Attention:  Wayne D. Meehan, Esq.
        Attorneys for Defendants,
        Atlantic Trader Navigation Ltd.,
        JSB Baltik Merkur

        Plaintiffs, by their attorneys, HILL RIVKINS & HAYDEN LLP, pursuant to Rules 26(d),

30(a)(2)(A)(iii) and 34 of the Federal Rules of Civil Procedure, request production of the

following

documents for inspection and copying:

1.      All deck and engine log books, both rough and smooth, for the voyage commencing September 1, 2007, until present.

2.      All statements by the vessel's officers relating to the loss of main engine power on/about March 18, 2008.

3.      All notes, workbooks, memoranda, emails and/or maintenance recommendations kept by the vessel's officers and/or superintendents relating to the repairs undertaken during the course of the pending voyage and from September 1, 2007 until present.

4.      All statements, notes, workbooks, and/or memoranda by the vessel's officers and Owner's representatives, relating to the anchor dragging on/about March 20, 2008 and the resulting salvage operation.

5.      All correspondence, email and records of communication to and from the vessel from February 12, 2008 until present, including but not limited to, facsimile and e-mails, correspondence, telephone calls between the vessel, its owners, repairers and/or salvors.

6.      All correspondence between the vessel and any repair contractor(s) relating to the repair of the main engine, the main engine turbo charger and/or auxiliary engine aboard the vessel from September 1, 2006 until present.

7.      The vessel's crew list as of sailing from St. Petersburg on/about February 29, 2008.

8.      The vessel's night orders, both deck and engine, for the voyage commencing February 12, 2008 until present.

9.      All classification report(s) and/or surveys for the repair/loss of main engine power on/about March 19, 2008 at Scapa Flow.

10.     All classification report(s) and/or surveyors for the vessel dating from March 19, 2006 until present.

11.     All communication between the vessel owners and its classification society regarding the status and/or deficiencies in the Atlantic Trader from March 19, 2006 until present.

12.     All records of state inspections / detentions from March 19, 2006 until present.

13.     All record(s) of the vessel's position from sailing St. Petersburg on/about February 29, 2008 with arrival at the Port of Houston, Texas on/about April 14, 2008.

14.     All maintenance and repair records for the main engine turbo charger aboard the vessel from March 19, 2006 until present.

15.    All maintenance and repair records for all equipment that was the subject of repair during the present voyage from March 19, 2006 until present.

16.    All vessel positioning data including, but not limited to, charts, plotted positions, AIS positions, GPS logs, GPS downloads, course recorder data, engine order data for the present voyage, including but not limited to the timeframe during which the vessel lost power, drifted, anchored, and underwent repair.

17.    All vessel records detailing the number of spare parts aboard the vessel relating to the main engine, turbo charger, and any other equipment /machinery that was the subject of repair during the voyage from Baltimore to St. Petersburg to Scapa Flow and Houston.

18.    All reports issued by the Master and/or Chief Engineer or other officers/crew relating to the loss of propulsion and dragging anchor on/about March 19, 2008.

19.    All correspondence to/from the vessel, including but not limited correspondence from the vessel to / from its owners/operators/charterers  and/or salvors relating to the loss of propulsion, the decision to anchor and the decision as to the location where the repairs to the vessel were to be made, dragging the anchor and the subsequent salvage operation.

20.    All maintenance and repair records for the main engine turbo charger aboard the

vessel from March 19, 2006, until present.

21.    Copies of all contracts with repair contractors and/or invoices for the purchase of parts for the repair of the main engine, turbo charger or any other machinery / equipment during the voyage from Baltimore to St. Petersburg to Scapa Flow and to Houston.

22.    All meteorological records for the voyage, including correspondence/e-mails to any weather routing service, weather facsimiles obtained by the vessel, weather maps, weather forecasts, weather routing, and barographs.

23.    All company manuals including but not limited to ISM materials / reports relating to planned maintenance and operation of the vessel's main engine and turbo chargers and/or any other equipment which needed repair or maintenance during the subject voyage.

24.    All records concerning the fuel oil consumed during the subject voyage including all records concerning the fuel oil quality, including those records relating to fuel oil/ bunkers aboard and/or consumed during the voyage, when it was received, qualitative reports, and any reports relating to contaminated fuel.

25.    All survey reports issued by the vessel's agents and/or contracts relating to the loss of propulsion and the dragging of the anchor at Scapa Flow.

Plaintiffs reserve their rights to supplement these Requests up to the time of trial of this action.

Dated: New York, New York
        April _____, 2008

                        HILL RIVKINS & HAYDEN
                        Attorneys for Plaintiffs,

               By: _____
                        Raymond P. Hayden (RH-5733)
                        Gerard W. White (GW-9797)

                        45 Broadway, Suite 1500
                        New York, New York 10006
                        (212) 669-0600

29810\Pleadings\Request For Production